# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JAMAL DUPREE ADAMS,

        Defendant-Appellant.

UNPUBLISHED
April 6, 2017

No. 329385
Wayne Circuit Court
LC No. 15-001874-01-FC

Before: MARKEY, P.J., and WILDER and SWARTZLE, JJ.

PER CURIAM.

A jury convicted defendant of assault with intent to commit murder, MCL 750.83, carjacking, MCL 750.529a, unlawful imprisonment, MCL 750.349b, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to 31 to 60 years in prison for the assault and carjacking convictions, and 10 to 15 years in prison for the unlawful imprisonment conviction, to be served concurrently, but consecutively to a two-year term of imprisonment for the felony-firearm conviction. Defendant appeals by right. We affirm.

Defendant's convictions arise from his participation in an attack on Sylvester Sanders, Jr., which began at defendant's home in Detroit during the early morning hours of December 4, 2014. Sanders and defendant had been longtime friends. On the night of the crimes, Sanders was visiting defendant's home, as he had many times before. Defendant's brothers, Dennis Adams and Tyresces Adams ("Tyrese"), and a man named Jarrett were also there. According to Sanders, the men were just talking and having a good time when Tyrese suddenly got up and demanded Sanders's car keys. Jarrett then grabbed Sanders and began hitting him, after which defendant, Dennis, and Tyrese joined in the attack. The men then dragged Sanders outside, and defendant and Jarrett placed him in the trunk of the car that Sanders had been driving. Sanders felt the car move slightly, but he found the trunk release, and he was able to escape from the car. According to Sanders, as he started to run away, he looked back and saw defendant standing near the driver's side of the car with a gun pointed at him. Sanders heard a gunshot and felt a bullet strike his arm. Sanders continued running through the neighborhood and later saw defendant

-1-

emerge from a car. Defendant fired more gunshots at Sanders. A bullet hit Sanders in the neck and grazed his head. Sanders decided to "play dead," after which he heard the car drive away.[1]

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

In his brief on appeal and in a pro se supplemental brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4, defendant raises numerous claims of ineffective assistance of counsel. Defendant did not raise these claims in the trial court, and this Court denied his motion to remand for a hearing[2] regarding some of these claims. Therefore, our review is limited to errors apparent from the record. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004); *People v Wilson*, 242 Mich App 350, 352; 619 NW2d 413 (2000).

The United States and Michigan Constitutions guarantee a defendant the right to the effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20. "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). To establish ineffective assistance of counsel, a defendant must show: (1) that counsel's performance was below an objective standard of reasonableness under prevailing professional norms, and (2) that there is a reasonable probability that but for counsel's deficient performance the result of the proceedings would have been different. *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). ; "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v Washington*, 466 US 668, 688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

## A. FAILURE TO REQUEST A CONTINUANCE

First, defendant argues that defense counsel failed to properly prepare and present a defense because he did not request a continuance or an adjournment. He suggests that defense counsel was therefore unable to file a witness list and object to the addition of his brother Tyrese to the prosecutor's witness list. We disagree.

A motion for a continuance must be based on good cause. MCR 2.503(B)(1); *People v Jackson*, 467 Mich 272, 276; 650 NW2d 665 (2002). MCR 2.503(D)(1) provides that "[i]n its discretion the court may grant an adjournment to promote the cause of justice." " 'Good cause' factors include 'whether defendant (1) asserted a constitutional right, (2) had a legitimate reason for asserting the right, (3) had been negligent, and (4) had requested previous adjournments.' " *People v Coy*, 258 Mich App 1, 18; 669 NW2d 831 (2003) (citation omitted). Regardless of good cause, a trial court's denial of a request for an adjournment is not grounds for reversal unless the defendant also demonstrates prejudice. *Id*. at 18-19.

---

[1] Dennis and Tyrese were both charged as codefendants. Dennis pleaded guilty of unlawful imprisonment, carjacking, and felony-firearm, and Tyrese pleaded guilty of carjacking and felony-firearm.

[2] See *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

In his brief on appeal, defendant does not cite MCR 2.503(B) or the good cause factors. Defendant argues, however, that the assertion of a constitutional right to counsel, specifically the substitution of retained attorneys, necessitated an adjournment. Even if good cause for an adjournment related to the substitution of counsel existed, defendant cannot demonstrate prejudice. The trial court granted the substitution of attorneys on July 2, 2015, only because defense counsel and defendant had advised the court that the substitution would not delay the trial scheduled for July 20, 2015.

Defendant asserts that with more time, defense counsel would not have stipulated to the addition of Tyrese to the prosecutor's witness list on the first day of trial. But even without the stipulation, the prosecutor was free to add or delete a witness from the witness list at any time upon leave of the court and with good cause. MCL 767.40a(4). The record shows that the prosecutor had good cause for the delay in adding Tyrese to the witness list. Specifically, Tyrese did not have a sentencing agreement requiring him to testify truthfully until sometime after his June 25, 2015 interview with the police. Moreover, defense counsel explained on the record that defendant was not surprised that the prosecution planned to call Tyrese as a witness. The December 2014 investigator's report, which defendant obtained through discovery, revealed that Tyrese had made a full confession. The prosecutor also provided all Tyrese's statements to defense counsel. Even though Tyrese was not listed on the witness list, the prosecutor told both of defendant's attorneys before trial that he would be testifying. Any objection to the addition of Tyrese to the witness list would have been futile. "Counsel is not ineffective for failing to make a futile objection." *People v Thomas*, 260 Mich App 450, 457; 678 NW2d 631 (2004). Therefore, defendant cannot establish that a request for an adjournment related to the substitution of counsel would have changed the result of the proceedings. *Trakhtenberg*, 493 Mich at 51. Defense counsel was not ineffective for failing to request an adjournment on this basis.

Defendant also suggests that if defense counsel had had more time, he would have filed a defense witness list, which he claims that prior counsel failed to do. Defendant's claim is inconsistent with the record. The prosecutor stated that prior counsel had filed a witness list on May 26, 2015, indicating that all res gestae witnesses known to defense counsel would be called. Moreover, defendant cannot demonstrate any prejudice related to the defense witness list. On the first day of trial, defense counsel asked to call Shawntez Thomas, even though he was not specifically named on prior counsel's witness list. The trial court allowed defense counsel to add him. Later, however, defense counsel decided—with defendant's consent on the record—that Thomas's testimony was not necessary to the defense. Because defendant was free to call Thomas if he wanted to, defendant cannot establish that not requesting an adjournment would have affected the outcome of the proceedings. *Id*.

## B. CALLING DEFENDANT TO TESTIFY

Defendant argues that defense counsel was ineffective for calling him to testify. He contends that defense counsel elicited questions that negatively impacted the case. We disagree.

A defendant has a constitutional right to testify at his own trial, *People v Boyd*, 470 Mich 363, 373; 682 NW2d 459 (2004), and the decision to exercise this right is a strategic assessment left to the discretion of defendant and his counsel, *People v Martin*, 150 Mich App 630, 640; 389 NW2d 713 (1986). The victim, defendant's longtime friend, Sylvester Sanders, Jr., identified

defendant as one of the perpetrators of the crimes committed against him by a group of his friends. Sanders specifically stated that defendant was the shooter. Defendant's theory of the case was that he did not participate in the crimes with the rest of the group. Defendant instead testified at trial that he was in the bathroom when Sanders was beaten in defendant's home. He claimed that after the rest of the group left the house, he stayed home to clean up the mess caused by the beating. The shooting and carjacking occurred after as well. Defendant does not argue that any other witness could have presented similar alibi testimony. Although defendant claims on appeal that his testimony hindered more than it helped him, " '[d]ecisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy,' which we will not second-guess with the benefit of hindsight." *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004), quoting *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). Moreover, defendant cannot establish that but for the decision to call him to testify, the outcome of the proceeding would have been different. Sanders's testimony, including his identification of defendant as the shooter, constituted overwhelming evidence to support the convictions. Nor has defendant argued that defense counsel could have alternatively refuted the testimony. Thus, defendant was not denied the effective assistance of counsel because he and defense counsel elected to have him testify at trial.

## C. TEXT MESSAGE TESTIMONY

Defendant argues that defense counsel was ineffective for failing to offer supporting evidence regarding text messages that Sanders allegedly sent to defendant after the crimes. Defense counsel questioned defendant about these text messages at trial. Defendant testified that Sanders wrote, "[H]ey, dog, I don't want this to go that far. Pay for old girl's car." But defendant testified that he deleted the text messages. On appeal, he has failed to satisfy his burden of proving that any additional evidence could have substantiated his testimony. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999) (a defendant raising a claim of ineffective assistance of counsel bears the burden of proving the factual predicate of his or her claim). Defendant suggests that an investigator could be hired to look for substantiation, but he does not identify any actual supporting evidence that could have been presented at trial. Moreover, defendant cannot establish that but for the failure to offer supporting evidence regarding the text messages the outcome of the trial would have been different. The text message did not exculpate him. Rather, the jury could infer from the purported text that defendant was involved and that Sanders would prefer to accept payment in lieu of prosecution. Therefore, defendant cannot establish that he was denied the effective assistance of counsel with regard to the purported text messages between Sanders and defendant.

## D. THE PROSECUTOR'S IMPEACHMENT OF TYRESE

Defendant argues that defense counsel was ineffective for failing to object to the prosecutor's impeachment of Tyrese. Any party may attack the credibility of a witness. MRE 607. MRE 613 addresses the manner of impeachment and provides:

> (a) In examining a witness concerning a prior statement made by the witness, whether written or not, the statement need not be shown nor its contents disclosed to the witness at that time, but on request it shall be shown or disclosed to opposing counsel and the witness.

(b) Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party opponent as defined in Rule 801(d)(2).

Tyrese testified that the men gathered at the house were "just talking" and "chilling" before Jarrett hit Sanders. Under MRE 613, the prosecutor was permitted to question Tyrese about whether he previously told the police that the scene was tense before the assault began because defendant was "ranting and raving" about Sanders being at his home. Likewise, Tyrese testified at trial that defendant just watched the incident, and Tyrese never saw defendant "do anything" related to the crime. Again, under MRE 613, the prosecutor could question him about whether he previously told the police that after Jarrett put Sanders in the trunk, defendant "got into the driver's seat and pulled off." Then, when Sanders escaped, defendant followed him with the car. Later, at trial, the prosecutor asked whether when defendant returned, Tyrese heard defendant say, "He got him around the corner?" Tyrese responded that he was focused on leaving and that others were "talking about something." The prosecutor could therefore question Tyrese about whether he previously told the police that defendant was not just talking about "something" with others, but that defendant said, "I got him around the corner. I got him around the corner." Because the prosecutor's questions were permissible, defense counsel was not ineffective for failing to raising a futile objection. *Thomas*, 260 Mich App at 457.

In a related argument, defendant argues that defense counsel was ineffective because he did not draw attention to Tyrese's explanation for his inconsistent statements, specifically, that he made the false statements in exchange for his release and sentencing considerations. The record does not support this argument. On the contrary, the record discloses that defense counsel specifically elicited from Tyrese on cross-examination that he falsified his statements for these reasons. He further elicited from Tyrese that the statements were not truthful and should not be believed. Contrary to defendant's claim, defense counsel also attempted to raise the subject again when questioning defendant. Defense counsel did what defendant argues he failed to do. That his strategy was unsuccessful will not cause this Court to second-guess it with the benefit of hindsight. *Dixon*, 263 Mich App at 398.

Defendant also argues that the prosecutor relied on Tyrese's statement as substantive evidence in her closing argument, and defense counsel failed to object. Initially, viewing the challenged remarks in context, we note it is not apparent that the prosecutor asked the jury to rely on Tyrese's statements as direct evidence of defendant's guilt. To the extent that the prosecutor's comments could be considered improper, however, "there are times when it is better not to object and draw attention to an improper comment." *People v Bahoda*, 448 Mich 261, 287 n 54; 531 NW2d 659 (1995). Moreover, the trial court instructed the jury that a witness's prior statements "can be considered by you in deciding whether the witness testified truthfully here during the trial. The earlier statement is not evidence that what the witness said earlier is true." The trial court also instructed the jury that the attorneys' arguments are not evidence. "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). So, defendant cannot demonstrate that but for the prosecutor's argument the outcome of the proceeding would have been different.

-5-

## E. FAILURE TO EXPLORE THE ISSUE OF MOTIVE

Defendant argues that defense counsel was ineffective for failing to pursue the lack of motive in this case. Again, defendant's argument is inconsistent with the record. On cross-examination of Sanders, defense counsel elicited that Sanders tried unsuccessfully to find out why his friends had targeted him. Defense counsel then repeatedly highlighted the lack of motive in his closing argument. Again, this Court will not second-guess defense counsel's strategy with the benefit of hindsight. *Dixon*, 263 Mich App at 398. Defendant does not argue how defense counsel could have addressed the lack of motive any differently. Thus, he cannot establish that he was denied the effective assistance of counsel on this basis.

## F. REASONABLENESS OF COUNSEL'S INVESTIGATION

Defendant argues that defense counsel failed to seek any independent witnesses or conduct any investigation in the neighborhood. But defendant does not offer any record evidence to support his claim regarding defense counsel's investigation. Moreover, defendant does not argue that even if defense counsel had conducted the type of investigation he proposes he should have that it would have revealed any outcome-determinative evidence. Accordingly, defendant has again failed to establish his burden of proving that defense counsel was ineffective. *Hoag*, 460 Mich at 6.

## G. FAILURE TO INVESTIGATE AND CALL WITNESSES

In his Standard 4 brief, defendant argues that defense counsel was ineffective for failing to investigate the proposed testimony of Thomas and defendant's mother and for failing to call them to testify. With regard to Thomas, the record belies defendant's claim of the failure to investigate. Defense counsel specifically stated on the record that he had intended to call Thomas to testify, but he talked to Thomas and consulted with defendant, and they both agreed not to call Thomas. In addition, defendant has failed to offer any record proof that defense counsel failed to investigate what testimony defendant's mother might offer. *Id*. Although defendant states in his Standard 4 brief that "forthcoming affidavits will show that these witnesses would have supported the defense theory," defendant has not provided those affidavits or made any arguments how the testimony would have supported his case. Absent such evidence, defendant cannot establish that but for defense counsel's decisions regarding Thomas and defendant's mother the outcome of the proceeding would have been different. *Id*. at 9.

## H. FAILURE TO IMPEACH WITNESSES

Defendant also argues in his Standard 4 brief that defense counsel was ineffective for failing to impeach Sanders and Tyrese with their criminal records. Again, defendant fails to meet his burden of providing a factual predicate to substantiate his claim. *Hoag*, 460 Mich at 6. The record demonstrates that Sanders had not been convicted of a crime involving theft or dishonesty in the 10 years before trial. His 2004 conviction was not admissible because more than 10 years had elapsed. See MCR 609(c). The record is silent regarding Tyrese's criminal background. Absent any record basis for impeachment, defendant cannot establish that but for defense counsel's failure to further question the witnesses regarding their criminal records the outcome of the trial would have been different. *Hoag*, 460 Mich at 9.

## II. PROSECUTORIAL MISCONDUCT

Defendant next raises several unpreserved claims of prosecutorial misconduct regarding the prosecutor's arguments to the jury, which we review for plain error affecting defendant's substantial rights. *People v Ackerman,* 257 Mich App 434, 448; 669 NW2d 818 (2003). When a jury instruction could have dissipated any prejudicial effect, reversal is not required. *Id.* at 449.

Defendant argues that the prosecutor erred by denigrating him by often stating, "When you have friends like these, who needs enemies?" We disagree. Our Supreme has explained:

> Generally, prosecutors are accorded great latitude regarding their arguments and conduct. They are free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." Nevertheless, prosecutors should not resort to civic duty arguments that appeal to the fears and prejudices of jury members or express their personal opinion of a defendant's guilt, and must refrain from denigrating a defendant with intemperate and prejudicial remarks. Such comments during closing argument will be reviewed in context to determine whether they constitute error requiring reversal. [*Bahoda,* 448 Mich at 282-283 (citations, alterations, and quotation marks omitted).]

The theme of the prosecutor's opening statement and closing argument was, "When you have friends like these, who needs enemies?" Sanders testified that three of his four attackers were longtime friends, and he never learned why they beat him, stuffed him into the trunk of a car, shot at him when he escaped, or stole the car that he was driving. Against this backdrop, the prosecutor's use of an idiom regarding friends and enemies in her arguments was not plainly erroneous. A prosecutor is not required to state her inferences or arguments in the blandest possible terms. *People v Launsbury*, 217 Mich App 358, 361; 551 NW2d 460 (1996).

Defendant also argues that the prosecutor erred by suggesting that she had special knowledge about the case when she used the phrase, "I believe," in her closing argument. While the prosecutor cannot vouch for the credibility of her witnesses by implying she has special knowledge concerning a witness's truthfulness, *Bahoda,* 448 Mich at 282-283, that did not occur in this case. In context, the prosecutor used the phrase to refer to the evidence, not her personal belief in defendant's guilt. The prosecutor did not use the prestige of her office; she never indicated that she had personal or special knowledge, or possessed extrajudicial information. Therefore, the prosecutor's use of the phrase "I believe" did not amount to plain error.

## III. GREAT WEIGHT OF THE EVIDENCE

Defendant argues in his Standard 4 brief that the verdict was against the great weight of the evidence. We disagree. Defendant did not preserve this issue by filing a motion for a new trial. *People v Lopez*, 305 Mich App 686, 695; 854 NW2d 205 (2014). "Unpreserved challenges to the great weight of the evidence are reviewed for plain error affecting the defendant's substantial rights." *Id*.

A new trial may be granted if a verdict is against the great weight of the evidence. MCR 2.611(A)(1)(e). But such a motion should be granted only when the evidence preponderates heavily against the verdict and a serious miscarriage of justice would otherwise result. *People v*

*Unger*, 278 Mich App 210, 232; 749 NW2d 272 (2008). In general, conflicting testimony and issues of witness credibility are insufficient grounds for granting a new trial. *Id*. Unless "directly contradictory testimony was so far impeached that it 'was deprived of all probative value or that the jury could not believe it,' or contradicted indisputable physical facts or defied physical realities, the trial court must defer to the jury's determination." *People v Lemmon*, 456 Mich 625, 645-646; 576 NW2d 129 (1998) (citation omitted).

The crux of defendant's entire argument is that Sanders's testimony was incredible. Defendant claims that Sanders's testimony was not credible because he was intoxicated. Although Sanders admitted to drinking and smoking marijuana before he visited defendant's home, the record does not demonstrate that he was intoxicated, let alone that the use of alcohol and drugs affected his testimony in any way. Instead, Sanders testified that his use of marijuana and alcohol did not interfere with his recollection. Sanders's use of alcohol and marijuana therefore did not deprive his testimony of all probative value such that the verdict cannot stand.

Defendant also claims that Sanders's identification was impeded because it was dark outside.[3] But Sanders had an opportunity to observe defendant inside before they went outside. The testimony also indicated that yards in the neighborhood were lit by porch lights and there was at least one nearby street light. Sanders's testimony that he saw defendant again in front of defendant's home and as he ran to escape the attackers was not contradicted by indisputable physical facts and did not defy physical realities. *Id.*

Defendant also asserts that Sanders's testimony was not credible because he could not recall the type of car that he drove to defendant's home that night and that the perpetrators stole. Indeed, Sanders was not sure of the model of the car and testified that it could have been a Malibu or Impala—both Chevrolets. But the car did not belong to Sanders, and months had passed since he drove it. Therefore, Sanders's lack of memory regarding this peripheral detail did not strip his entire testimony of probative value.[4]

Defendant claims that Sanders was incredible because he testified that he heard multiple gunshots, but the police did not find accompanying firearms' evidence of the shooting. Indeed, the police only recovered one bullet, but blood spots and bloody clothing were recovered along Sanders's escape route. Still, the fact that the police did not locate more firearms' evidence in a nighttime crime scene that spanned more than a block and a half does not defy physical realities.

---

[3] Defendant claims that Sanders's observations in the dark were inconsistent with his testimony, "I couldn't see." Defendant misrepresents the record. Tyrese, not Sanders, provided the testimony that he could not see what happened outside defendant's house because he was inside.

[4] Defendant also claims that Sanders testified inconsistently about the color of the car and on which side defendant stood when Sanders escaped from the trunk. But the citations defendant provides do not evidence any inconsistencies. Defendant also claims that it was impossible for Sanders to observe a car in front of the tan car while he was in the trunk, but Sanders testified that he saw the other car after he exited the trunk.

Defendant also suggests that it was impossible for Sanders to have escaped from the car trunk by finding the trunk release in the dark in such a short amount of time. Even though Sanders admitted that he had never looked for a release in that trunk before, did not know whether it had one, and his escape was "by the grace of God," nothing in the record demonstrates that Sanders's testimony regarding the timing of his escape was impossible.

Finally, defendant asserts that Tyrese never pointed the finger at him, the investigation of the crime scene was "messed up," and Sanders had no problems with him. Defendant's challenges again do not pertain to the elements of the crimes; they again relate to the credibility and consistency of the evidence. Even without Tyrese's corroborating testimony, additional physical evidence collected by the police, or a clear motive, Sanders's testimony that defendant was the shooter unequivocally supported the verdict. It cannot be said that Sanders's testimony was so deprived of all probative value that it could not be believed by a reasonable juror. *Lemmon*, 456 Mich at 644. Accordingly, defendant cannot establish plain error affecting his substantial rights based on his great weight of the evidence claim.

## IV. SUFFICIENCY OF THE EVIDENCE

Defendant argues that there was insufficient evidence that he was the perpetrator to support his convictions. We disagree.

In a challenge to the sufficiency of the evidence in a jury trial, this Court reviews de novo the evidence in the light most favorable to the prosecution to determine whether the trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt. *People v Henderson*, 306 Mich App 1, 8-9; 854 NW2d 234 (2014). All conflicts in the evidence must be resolved in favor of the prosecution. *Id*. at 9.

"The elements of assault with intent to commit murder are (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v Ericksen*, 288 Mich App 192, 195-196; 793 NW2d 120 (2010) (quotation marks and citation omitted).

A carjacking occurs when while committing a larceny of a motor vehicle the defendant uses (1) "force or violence," (2) "the threat of force or violence," or (3) puts "in fear any operator, passenger, or person in lawful possession of the motor vehicle, or any person lawfully attempting to recover the motor vehicle." MCL 750.529a(1); *People v Hardy*, 494 Mich 430, 444; 835 NW2d 340 (2013).

The elements of unlawful imprisonment are stated in MCL 750.349b(1):

A person commits the crime of unlawful imprisonment if he or she knowingly restrains another person under any of the following circumstances:

(a) The person is restrained by means of a weapon or dangerous instrument.

(b) The restrained person was secretly confined.

(c) The person was restrained to facilitate the commission of another felony or to facilitate flight after commission of another felony.

The statute defines the term "restrain" as "to forcibly restrict a person's movements or to forcibly confine the person so as to interfere with that person's liberty without that person's consent or without lawful authority." MCL 750.349b(3)(a). The restraint need not last "for any particular length of time." *Id.*; *People v Bosca*, 310 Mich App 1, 18; 871 NW2d 307 (2015). MCL 750.349b(3)(b) also defines the words "secretly confined" to mean either "(*i*) [t]o keep the confinement of the restrained person a secret" or "(*ii*) [t]o keep the location of the restrained person a secret."

In, this case, the prosecutor charged defendant with a violation of MCL 750.349b(1)(a), and the trial court similarly instructed the jury that it must find that the "person restrained was restrained by means of a weapon or a dangerous instrument."[5]

"The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999). Again, defendant's primary challenge on appeal is whether there was sufficient evidence to identify him as a perpetrator of the charged crimes. Identity is an essential element of every crime. *People v Yost*, 278 Mich App 341, 354; 749 NW2d 753 (2008).

There was sufficient evidence that defendant was the perpetrator to support defendant's convictions. Sanders was defendant's longtime friend. Although Tyrese initiated the fray by demanding Sanders's keys, Sanders identified defendant as being among the group of men who "rushed" him and hit him before dragging him out of defendant's home. Sanders testified that defendant was armed with a gun and helped force him into the trunk. The jury could infer that defendant then started to drive Sanders's car away from the evidence that, when Sanders escaped from the trunk, he saw defendant standing by the driver's side with a gun pointed at him. As Sanders ran, Sanders heard a gunshot and felt a bullet strike his arm. Sanders saw and heard defendant chasing him with the other men. When defendant found Sanders in front of a home where Sanders had sought assistance, defendant fired numerous gunshots at Sanders from 8 to 10 feet away. Sanders testified that after defendant's brother, Dennis Adams, told defendant to shoot Sanders again because he was not dead, defendant fired more shots and left. Viewing Sander's testimony in a light most favorable to the prosecution, *Henderson*, 306 Mich App at 9, and given that "positive identification by witnesses may be sufficient to support a conviction of a

---

[5] The trial court also instructed the jury on aiding and abetting, MCL 767.39, for the crimes of carjacking and unlawful imprisonment. "An aider and abettor's state of mind may be inferred from all the facts and circumstances." *People v Carines*, 460 Mich 750, 758; 597 NW2d 130 (1999). "Factors that may be considered include a close association between the defendant and the principal, the defendant's participation in the planning or execution of the crime, and evidence of flight after the crime." *Id*. "Mere presence, even with knowledge that an offense is about to be committed or is being committed, is insufficient to establish that a defendant aided or assisted in the commission of the crime." *People v Norris*, 236 Mich App 411, 419-420; 600 NW2d 658 (1999).

crime," *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000), we conclude there was sufficient evidence to support a rational trier of fact's conclusion that defendant was the perpetrator.

Defendant attempts to attack the credibility of the evidence by citing his own testimony that he was not involved with the crimes.[6] But credibility determinations are within the exclusive province of the jury and will not be second-guessed by this Court. *Henderson*, 306 Mich App at 9, 13. Defendant also claims that he lacked motive to commit the crimes. But the prosecutor was not required to prove motive because it was not an element of the charged offenses. See *People v Oliphant*, 399 Mich 472, 489; 250 NW2d 443 (1976).

Defendant also claims in passing that the prosecutor failed to establish the requisite intent for assault with intent to commit murder. "Intent to kill may be inferred from all the facts in evidence," including use of a deadly weapon, taking aim at a victim, injury to the victim, evidence of flight and attempts to hide evidence. *People v Henderson*, 306 Mich App 1, 11-12; 854 NW2d 234 (2014). Sanders's testified that defendant was armed with a gun, pursued him through the neighborhood and fired numerous shots at him. Defendant fired at Sanders again when Dennis told defendant to continue shooting because Sanders was not dead. After Sanders was shot in the arm, neck, and head, he decided to "play dead." From defendant's use of the weapon and his continued shooting at Sanders in response to Dennis's statement that Sanders was not yet dead, the jury could infer that defendant intended to kill Sanders. Thus, there was sufficient evidence of intent to support defendant's assault with intent to commit murder conviction.

Defendant also claims, again in passing, that there was insufficient evidence to support his conviction of unlawful imprisonment. According to Sanders, when the group took Sanders outside, defendant said, "[P]ut him in the trunk." At that time, Sanders observed that defendant possessed a gun. Sanders was then forced into the trunk of the car, where he was confined until he found the trunk release and escaped shortly afterward. Although Sanders's confinement was short-lived, there is no requirement that it had to last "for any particular length of time." MCL 750.349b(3)(a). Sufficient evidence existed for the jury to conclude that defendant used the gun to force Sanders into the trunk of the car and to therefore support his unlawful imprisonment conviction.

We affirm.

/s/ Jane E. Markey
/s/ Kurtis T. Wilder
/s/ Brock A. Swartzle

---

[6] Defendant also attempts to expand the record by arguing that his past criminal history demonstrates that he would not resort to violence. This Court will not consider unlawful attempts to expand the record on appeal. MCR 7.210(A)(2); *People v Powell*, 235 Mich App 557, 561 n 4; 599 NW2d 499 (1999).