*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

BETH ANN STAMAT,

        Defendant-Appellant.

UNPUBLISHED
April 25, 2019

No. 340560
Macomb Circuit Court
LC No. 2016-003958-FH

Before: MURRAY, C.J., and SAWYER and REDFORD, JJ.

PER CURIAM.

Defendant appeals as of right her jury trial convictions of first-degree home invasion, MCL 750.110a(2), and aggravated stalking, MCL 750.411i(2).[1] The trial court sentenced defendant to five years' probation, with the first year to be served in jail, for each conviction. We affirm.

## I. FACTS

In May 2016, defendant's husband, George Stamat, was diagnosed with "Lou Gehrig's disease," i.e., amyotrophic lateral sclerosis. In July 2016, George began "steadily" living with his parents, Daniel and Domenica, at their house because he was "separated" from defendant, he had filed for a divorce, and they "had an open domestic violence case." George clarified that particular case pertained to his alleged conduct against defendant, and that he was ultimately acquitted.

At approximately the end of July 2016, George's mother obtained a personal protection order (PPO) against defendant because, although defendant "was told multiple times to stay

---

[1] The jury acquitted defendant of one count of domestic violence, second offense, MCL 750.81(2).

away from" the house, she "came multiple times" to the house. Domenica explained that defendant would call her names, swear at her, and say negative things about George to her.

On one morning, toward the end of August 2016, only George and his father were at home. At some point, Daniel noticed defendant outside, and he woke up George to inform him that defendant had arrived at the house to see him. George got out of bed and walked to the house's front porch. Eventually, George and defendant engaged in a conversation, and after their conversation "escalat[ed]," George walked to the house's back door. However, defendant "hooked" George's arm as he "stepped into the house" and "yanked" George "back outside." Defendant then spoke to George again, which culminated in defendant "rip[ping] off her jewelry" and throwing it at George as she was "walking towards the gate to leave."

Defendant left through the backyard gate, and George "walk[ed] over to the gate" to secure its latch while defendant was "going on and on." However, as George approached the gate, defendant "storm[ed]" past George, "pushed" him "out of the way," and "went into the house." He confirmed that when defendant entered the house, the house's door had "been closed completely before she walked in[.]" George then secured the latch and entered the house. He noticed that defendant "was in the bathroom," where he "believe[d]" that she "was wiping . . . her tears" and "getting herself cleaned up." Defendant then "stormed" past George "into the hallway," and she "went into the kitchen," where she "yelled" at George "some more" until "she left out the backdoor." After defendant left, George went into his bedroom, where he noticed that his license, debit card, a couple of credit cards, and his cellular phone were missing. During trial, George clarified that defendant returned the missing items approximately one week later, except for his cellular phone, which she returned at "a later date."

## II. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that the prosecution failed to present sufficient evidence during trial to support her conviction of first-degree home invasion because there was no evidence that defendant "broke" into the house. Defendant, who assumes that there was insufficient evidence to support her conviction, also argues that any finding that there was sufficient evidence to support her conviction under an alternative theory of "entry without permission" would violate her right to a properly instructed jury.

A defendant may raise a challenge to the sufficiency of the evidence on appeal without preserving the issue below. *People v Williams*, 294 Mich App 461, 471; 811 NW2d 88 (2011). Generally, an issue is preserved for appellate review when it is raised before and addressed and decided by a trial court. *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). Under MCR 2.512(C),

> [a] party may assign as error the giving of or the failure to give an instruction only if the party objects on the record before the jury retires to consider the verdict (or, in the case of instructions given after deliberations have begun, before the jury resumes deliberations), stating specifically the matter to which the party objects and the grounds for the objection. Opportunity must be given to make the objection out of the hearing of the jury.

However, "[a]n objection based on one ground is usually considered insufficient to preserve an appellate attack based on a different ground." *People v Kimble*, 470 Mich 305, 309; 684 NW2d 669 (2004).

During trial, defendant did not object to the jury instructions, and defense counsel expressed satisfaction with the jury instructions as provided to the jury. Therefore, defendant's argument relating to the jury instructions is not preserved for appellate review and, as discussed in greater detail below, defendant has waived her challenge relating to the jury instructions.

A challenge to the sufficiency of the evidence is reviewed de novo. *People v Harrison*, 283 Mich App 374, 377-378; 768 NW2d 98 (2009). The evidence must be viewed "in the light most favorable to the prosecution in order to determine whether a rational trier of fact could have found that the prosecution proved the elements of the crime beyond a reasonable doubt." *People v Levigne*, 297 Mich App 278, 281-282; 823 NW2d 429 (2012). It is the role of the trier of fact to determine the weight of the evidence and evaluate the credibility of witnesses. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

"Claims of instructional error are generally reviewed de novo by this Court, but the trial court's determination that a jury instruction is applicable to the facts of the case is reviewed for an abuse of discretion." *People v Henderson*, 306 Mich App 1, 3; 854 NW2d 234 (2014). An abuse of discretion occurs when the outcome chosen by the trial court falls outside the range of principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

"The defendant bears the burden of establishing that the asserted instructional error resulted in a miscarriage of justice." *People v Dupree*, 486 Mich 693, 702; 788 NW2d 399 (2010). A miscarriage of justice occurs when "it is more probable than not that a different outcome would have resulted without the error." *People v Lukity*, 460 Mich 484, 495; 596 NW2d 607 (1999).

However, because defendant's claim is not preserved, defendant must demonstrate that an error occurred, the error was plain, and the plain error affected substantial rights to avoid forfeiture under the plain error rule. *People v Buie*, 285 Mich App 401, 407; 775 NW2d 817 (2009). "The third prong requires a showing of prejudice, which occurs when the error affected the outcome of the lower court proceedings." *People v Putman*, 309 Mich App 240, 243; 870 NW2d 593 (2015). "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error 'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings' independent of the defendant's innocence." *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999), quoting *United States v Olano*, 507 US 725, 736-737; 113 S Ct 1770; 123 L Ed 2d 508 (1993) (quotation marks omitted; alteration in original).

When reviewing a challenge to the sufficiency of the evidence, "[a]ll conflicts in the evidence must be resolved in favor of the prosecution, and circumstantial evidence and all reasonable inferences drawn therefrom can constitute satisfactory proof of the crime." *People v Solloway*, 316 Mich App 174, 180-181; 891 NW2d 255 (2016) (citations omitted). "Circumstantial evidence and reasonable inferences that arise from such evidence can constitute

satisfactory proof of the elements of the crime." *People v Williams*, 268 Mich App 416, 419; 707 NW2d 624 (2005).

As explained by this Court:

[T]he elements of first-degree home invasion are: (1) the defendant either breaks and enters a dwelling or enters a dwelling without permission; (2) the defendant either intends when entering to commit a felony, larceny, or assault in the dwelling or at any time while entering, present in, or exiting the dwelling actually commits a felony, larceny, or assault; and (3) while the defendant is entering, present in, or exiting the dwelling, either (a) the defendant is armed with a dangerous weapon, or (b) another person is lawfully present in the dwelling. [*People v Bush*, 315 Mich App 237, 244; 890 NW2d 370 (2016), citing MCL 750.110a(2).]

"Under Michigan law, any amount of force used to open a door or window to enter the building, no matter how slight, is sufficient to constitute a breaking." *People v Toole*, 227 Mich App 656, 659; 576 NW2d 441 (1998).

Defendant argues that the prosecution presented insufficient evidence to support her conviction under MCL 750.110a(2). Specifically, defendant asserts that there was insufficient evidence to establish the "breaking" element of first-degree home invasion. Defendant's argument is without merit.

During trial, George testified that, after defendant left the property through the house's backyard gate, he went to the backyard gate to "fix" the gate's latch to ensure it was properly shut. While George was fixing the latch, defendant "storm[ed]" past him, "pushed" him "out of the way," and "went into the house." He confirmed that, when defendant entered the house, the door that she entered through had "been closed completely before she walked in[.]"

Defendant asserts that there was insufficient evidence to support a finding that she broke into the house because George "never testified that [defendant] opened a door," he "never testified as to how [defendant] gained entry to the dwelling," and he "never described the use of any force to gain entry." However, George testified that defendant "went into the house," and he confirmed that the house's door had "been closed completely before [defendant] walked in" the house. Thus, the jury could have reasonably inferred that defendant must have opened the door to the house before she entered it, and that opening the door required defendant to use some amount of force. As previously discussed, "any amount of force used to open a door or window to enter the building, no matter how slight, is sufficient to constitute a breaking." *Toole*, 227 Mich App at 659. Therefore, there was sufficient evidence presented during trial to support a finding that defendant broke into the house.

Defendant also asserts on appeal that the prosecution may argue, as an alternative ground for affirmance, that there was sufficient evidence presented during trial to support a finding that defendant entered the house without permission, even though the jury instructions only included an instruction pertaining to breaking and entering. Therefore, defendant preemptively contends

that, if the prosecution were to raise such an argument, she "was denied her rights to due process and to a properly instructed jury" because the jury was not instructed on the alternative element of "entry without permission." Despite defendant's prediction, the prosecution does not advance this argument on appeal and instead only argues that there was sufficient evidence presented during trial to support a finding that defendant broke into the house. Because we have concluded that there was sufficient evidence to support a finding that defendant broke into the house, there is no need to further address defendant's argument regarding the jury instructions, as there is no need to consider whether there are any alternative grounds for affirmance.

Regardless, defendant's argument would fail on appeal because it was waived at trial. "[E]xpressions of satisfaction with the trial court's instructions constitute a waiver of any instructional error." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004); see *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000). The Michigan Supreme Court "has defined 'waiver' as 'the intentional relinquishment or abandonment of a known right.' " *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011), quoting *Carter*, 462 Mich at 206. " 'One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error.' " *Kowalski*, 489 Mich at 503, quoting *Carter*, 462 Mich at 206. During trial, defense counsel expressed satisfaction with the jury instructions. Thus, defendant has waived any argument pertaining to the jury instructions.

### III. RIGHT TO TESTIFY AND PRESENT A DEFENSE

Next, defendant contends that the trial court erred when the court denied her "request" for an adjournment during trial, and the trial court's denial of her "request" resulted in the denial of her right to testify and her right to present a defense. However, during trial, defendant never requested an adjournment after she informed the trial court, through defense counsel, that she would not testify. There is nothing in the record to suggest that the trial court interpreted defendant's vacillation regarding her decision to testify as a request for an adjournment or that it ever "ruled" on such a request. Further, defendant never raised any objection in the trial court pertaining to any denial of her right to testify or her right to present a defense. Therefore, this issue is not preserved for appellate review. *Metamora*, 276 Mich App at 382.

"This Court reviews de novo whether defendant suffered a deprivation of his constitutional right to present a defense." *People v Steele*, 283 Mich App 472, 480; 769 NW2d 256 (2009) (citation omitted). "This Court reviews the grant or denial of an adjournment for an abuse of discretion." *People v Snider*, 239 Mich App 393, 421; 608 NW2d 502 (2000). An abuse of discretion occurs when the outcome selected by the trial court falls outside the range of principled outcomes. *Babcock*, 469 Mich at 269. Additionally, "a defendant must show prejudice as a result of the trial court's abuse of discretion." *Snider*, 239 Mich App at 421. However, because defendant's claims are not preserved, defendant must demonstrate that an error occurred, the error was plain, and the plain error affected substantial rights to avoid forfeiture under the plain error rule. *Buie*, 285 Mich App at 407.

"A criminal defendant has a state and federal constitutional right to present a defense, which includes the right to call witnesses, but this right is not absolute." *People v Daniels*, 311

Mich App 257, 265; 874 NW2d 732 (2015). "A defendant must comply with 'established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.' " *Id.*, quoting *People v Yost*, 278 Mich App 341, 379; 749 NW2d 753 (2008). Thus, "the right to present relevant testimony is not without limitation" and "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Rock v Arkansas*, 483 US 44, 55; 107 S Ct 2704; 97 L Ed 2d 37 (1987) (quotation marks and citation omitted).

"A defendant's right to testify in his own defense stems from the Fifth, Sixth, and Fourteenth amendments of the United States Constitution." *People v Boyd*, 470 Mich 363, 373; 682 NW2d 459 (2004), citing *Rock*, 483 US at 51-52. The 1963 Michigan Constitution also provides a defendant with the right to testify during trial. Const 1963, art 1, §§ 17, 20. "Although counsel must advise a defendant of this right, the ultimate decision whether to testify at trial remains with the defendant." *People v Bonilla-Machado*, 489 Mich 412, 419; 803 NW2d 217 (2011). If a defendant "decides not to testify or acquiesces in his attorney's decision that he not testify, the right will be deemed waived." *People v Simmons*, 140 Mich App 681, 685; 364 NW2d 783 (1985) (quotation marks and citation omitted).

While "a trial court is entitled to control the proceedings in its courtroom, it is not entitled to do so at the expense of a defendant's constitutional rights." *People v Arquette*, 202 Mich App 227, 232; 507 NW2d 824 (1993). However, "it is not every denial of a request for more time that violates due process even if the party fails to offer evidence . . . ." *Ungar v Sarafite*, 376 US 575, 589; 84 S Ct 841; 11 L Ed 2d 921 (1964). "A defendant is entitled to a fair trial, not a perfect one." *Solloway*, 316 Mich App at 201.

MCR 2.503(B)(1) provides, in relevant part: "Unless the court allows otherwise, a request for an adjournment must be by motion or stipulation made in writing or orally in open court based on good cause."[2] "A motion for adjournment must be based on good cause." *People v Coy*, 258 Mich App 1, 18; 669 NW2d 831 (2003). Relatedly, MCL 768.2 provides, in pertinent part: "No adjournments, continuances or delays of criminal causes shall be granted by any court except for good cause shown in the manner provided by law for adjournments, continuances and delays in the trial of civil causes in courts of record[.]" " 'Good cause' factors include 'whether defendant (1) asserted a constitutional right, (2) had a legitimate reason for asserting the right, (3) had been negligent, and (4) had requested previous adjournments.' " *Coy*, 258 Mich App at 18, quoting *People v Lawton*, 196 Mich App 341, 348; 492 NW2d 810 (1992).

On the second day of trial, which took place on a Friday, at approximately 4:11 p.m., the trial court allowed a brief recess for defense counsel to consult with defendant regarding whether she would testify on her own behalf. The trial court ended the recess at approximately 4:26 p.m., and it proceeded to ask defense counsel if her "client reached a decision." Defense counsel

---

[2] MCR 2.503(C) pertains to requests for adjournments based on witness unavailability, however, MCR 2.503(C) is not applicable here because defendant was present during the trial when she made her "request" for an adjournment.

replied that she was "absolutely not quite sure," however, defendant interjected and said, "I'm going to take the stand." Defendant clarified that she would testify on her own behalf. After the trial court provided an explanation to defendant regarding the potential jury instructions that defendant would be entitled to if she decided not to testify, the trial court asked defendant, "it is your decision to testify, right?" Defendant replied, "Yes, my decision."

Defense counsel then asked the trial court, "do you know how long we're going to go," referring to how long the trial would continue on that day. The trial court responded that it would "go to 5:00 p.m. today," but that it "could go longer, maybe." It clarified that it did not "want to give up the half hour" between "4:30 p.m. and 5:00 p.m. because we're not going to have a lot of time on Monday," and that it "would hope that we could get through as much, or maybe even conclude the testimony of [defendant] today." The trial court then asked defense counsel for an estimate of how long defendant's testimony would last. Instead of answering the trial court's question, defense counsel replied, "Your Honor, [defendant has] indicated to me that if, if we're going to go forward today, she's not going to testify, so we'll just go to closing." Defense counsel explained that defendant was "exhausted, and she does not want to put that out there."

The trial court observed that "this [was] a change in position," and that it wanted "to make sure it's a rational and understandable one." The trial court proceeded to explain that it "could leave it up to the jury to decide how long they wanted to stay tonight," or that it could bring the jury back on Monday, where the trial court would only have between "12:30 p.m. to 2:00 p.m. to be able to do the closing arguments and instructions . . . ." Thus, the trial court explained that, if defendant decided to not testify, then the trial would proceed with the closing arguments, and therefore, there would "be no chance for the Defendant to change her mind on Monday, and say now I want to testify." After the trial court finished its explanation, the trial court asked defense counsel, "now knowing the timing and the ground rules, does your client wish to testify, yes, or does not wish to testify?" The trial court clarified that "[o]ne way or the other" it needed "a final decision right now."

Defense counsel replied that, "just for the record, the reason why [defendant] is saying she doesn't want to testify is she's exhausted, and overly emotional, and she believes that I am not on my toes to ask her questions." She then asked defendant "if we are moving forward today, you are not testifying, is that correct?" Defendant replied, "Yes." Thus, defense counsel stated, "So, she is not testifying, Your Honor."

However, the trial court noted that it was "going to take another two or three minutes" because it believed that it "was necessary" as it did not "know if this [was] just an excess of emotion" on defendant's part, or if defendant was attempting a "ploy," although it noted that "could be too big a word because it might not be exactly what's happening over here . . . ." The trial court explained that "a Defendant cannot bootstrap his or her way into ineffective assistance of counsel or try to create error." It noted that it was "4:30 p.m. on a Friday," that the trial had "been going since morning," but that it had not "been going at such a breakneck pace" that it could "say that this trial has created any unusual physical or mental strain that is different from other trials." Thus, the trial court observed that "it [was] not unreasonable to expect to wrap up today," even though "people [were] tired," because "it [was] not beyond the range of human

endurance." The trial court explained that it was "not going to be toyed with," as defendant was either "going to testify because she thinks it's in her best interest, or she's not going to testify because she thinks it's not in her best interest," and that it would not "let somebody get away with trying to build in some error on this record."

The trial court proceeded to observe that, even though defendant might be tired, "the fact that [defendant was] tired should not make any difference." Further, the trial court observed that, according to its evaluation of defendant's state at that time, defendant was not "so exhausted as to not be able to talk," "understand an oath," or "tell the truth." The trial court explained that it did not "seem rational" that "just a moment ago" defendant "wanted to testify because" she thought it was in her best interest, and that only after defendant was told that "we're going to call you today that suddenly you're too tired." It then asked defendant for "an explanation of why" she "changed [her] mind." Defendant replied that she had "a migraine," defense counsel also had a migraine headache, and that defense counsel was "not as alert as she could be." Defendant explained that it was "a tough decision to make to testify," and that it was "the circumstances around" the trial that were "making [defendant] emotional," and not the "trial" or its length.

The trial court asked defendant if she was still suffering from a migraine headache. Defendant responded, "Yes, in the back side." The trial court asked defense counsel if it was true that she was also suffering from a migraine headache. Defense counsel replied that she was suffering from a migraine headache, but she explained that even though her "head hurt[]," she did not "believe it would interfere with [her] asking questions." The trial court observed that defendant was "not in court all the time," and thus, it reminded defendant that if she did not testify then "the very next thing" that would occur was "closing argument." It speculated that if defendant thought that defense counsel was "too tired to question [defendant], then obviously [she was] probably worried about her performance in closing argument, which is perhaps, well, [defendant's] testimony is important but so is closing argument." Thus, the trial court hypothesized that "a person in [defendant's] shoes might make a better calculation by saying let me take the stand, let me testify today, that means that my lawyer will be fresh for closing argument on Monday at 12:30 p.m."

Ultimately, the trial court asked defendant, "[a]fter all of this commentary," if she wanted to testify. Defendant replied, "No, Your Honor." The trial court responded by indicating that it was "going to go to closing argument then." However, the trial court ultimately elected to adjourn the trial for the day after the prosecution concluded its closing argument, as it did not believe that was "unfairly prejudicial to the Prosecution" that defense counsel would "have an extra weekend to prepare" her closing argument because the "Prosecutor [did] get the right of rebuttal." Moreover, the trial court expressed concern regarding whether the jury would reach "a verdict for the sake of convenience" if it began its deliberations on that day.

Defendant argues that the trial court erred when it denied her "request" for adjournment, which resulted in the denial of defendant's right to testify and her right to present a defense. Defendant's argument is without merit.

While defendant contends that she was denied the right to testify during her trial, defendant expressly and repeatedly waived her right to testify during trial. If a defendant

"decides not to testify . . . the right will be deemed waived." *Simmons*, 140 Mich App at 685 (quotation marks and citation omitted). Therefore, defendant's waiver extinguishes any claim of error raised by defendant regarding her right to testify.

Regardless, the record does not reveal any instance where the trial court attempted to prevent defendant from testifying. The trial court went to great lengths to ensure that defendant was certain regarding her decision to not testify, and the trial court even went so far as to pose a hypothetical scenario to defendant wherein the trial court observed that a similarly situated defendant that was concerned about his or her lawyer's performance would be better served by testifying in order to make sure his or her lawyer was fully rested before closing arguments. Despite initially vacillating regarding her decision to testify, the only party that prevented defendant from testifying was herself.

Defendant also asserts that the trial court erred when it denied her "request" to adjourn the trial due to her migraine headache, defense counsel's migraine headache, and defense counsel's lack of alertness, and that this resulted in the denial of her right to testify on her own behalf. As defendant waived her right to testify during trial, defendant's assertion fails.

Moreover, defendant has mischaracterized the lower court record. Defendant concedes in her brief on appeal that she "never *expressly* requested an adjournment of the trial until Monday," but she contends that "the extensive commentary by the trial judge establishes that he treated the defense's [sic] statements as such a request, and the court considered and ruled on a request to adjourn." Contrary to defendant's characterization of the record, the trial court never ruled on defendant's "request" to adjourn. After defendant explained why she had decided to not testify, the trial court replied by explaining that "people are guaranteed fair trials, not perfect trials," and then, as discussed above, the trial court even posed a hypothetical scenario to defendant to suggest the possible advantages of testifying on her own behalf. Therefore, defendant never requested an adjournment, and the trial court never ruled on such a request.

Even considering whether the trial court should have sua sponte ordered an adjournment after defendant explained that she and defense counsel had migraine headaches, defendant's argument remains meritless. An adjournment would have required good cause. MCR 2.503(B)(1); MCL 768.2. Defendant has failed to demonstrate that there was good cause to adjourn the trial.

When considering the "good cause" factors, defendant fails to establish that she was asserting a constitutional right. While defendant characterizes the basis for her "request" for an adjournment as her constitutional right to testify on her own behalf, defendant elected to not testify on her own behalf and waived that right. Therefore, defendant fails to establish what constitutional right, if any, she was asserting in the trial court when she explained why she had decided to not testify. "[T]he right to present relevant testimony is not without limitation" and "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Rock*, 483 US at 55 (quotation marks and citation omitted). And "[a] defendant is entitled to a fair trial, not a perfect one." *Solloway*, 316 Mich App at 201, citing *Miller*, 482 Mich at 559. Thus, defendant's statements regarding her migraine headache and her concern

about defense counsel's migraine headache do not directly identify an asserted constitutional right, and defendant fails to provide any further explanation on appeal.

Therefore, as defendant was not asserting a constitutional right, defendant has necessarily failed to demonstrate that she had a legitimate reason for asserting that right. And finally, while defendant did not request previous adjournments, that fact by itself provides little reason to conclude that the trial court had good cause to adjourn the trial sua sponte after defendant explained why she had decided to not testify on her own behalf.

Affirmed.

/s/ Christopher M. Murray
/s/ David H. Sawyer
/s/ James Robert Redford