*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JAMES TROY WYATT,

Defendant-Appellant.

UNPUBLISHED
June 20, 2019

No. 343375
Oakland Circuit Court
LC No. 2017-261424-FH

Before: SAWYER, P.J., and O'BRIEN and LETICA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction for first-degree home invasion, MCL 750.110a(2). Defendant was sentenced as a fourth habitual offender, MCL 769.12, to 30 months to 40 years' imprisonment for his first-degree home invasion conviction. On appeal, defendant argues that his conviction and sentence should be reversed because his trial counsel, Patrick R. Wilson, was ineffective, the prosecutor made improper comments during closing arguments, there was insufficient evidence to sustain his conviction, and the trial court erred by denying his request for a third-degree home invasion jury instruction. We disagree.

## I. FACTS

On December 23, 2016, Eric Schmelling, was in his apartment when he heard a disturbance outside his window. Schmelling saw defendant and defendant's friend attempting to enter through the fire exit door of the apartment complex in which Schmelling and defendant both lived. Schmelling told defendant and defendant's friend that they needed to use the front door to enter the apartment complex. Schmelling's comment angered defendant and his friend; their verbal response prompted Schmelling to call 911. Defendant and his friend attempted to enter Schmelling's apartment while Schmelling was on the telephone with the police. Schmelling attempted to stop defendant and his friend, but the door to Schmelling's apartment was broken off of its hinges and Schmelling was pushed back into his closet, breaking his closet door. Defendant and his friend then attempted to hit Schmelling, but Schmelling was still holding the door to his apartment and defendant and his friend were unable to reach Schmelling.

Defendant and his friend left Schmelling's apartment after Schmelling told them that the police were on their way. The police arrived shortly thereafter.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that Wilson was ineffective as his trial counsel because Wilson failed to effectively impeach Schmelling or present any witnesses in defendant's defense and because Wilson prevented defendant from testifying in his own defense. We disagree.

Regardless of whether a claim of ineffective assistance is duly preserved, if the trial court did not hold a *Ginther*[1] hearing, "our review is limited to the facts on the record." *People v Wilson*, 242 Mich App 350, 352; 619 NW2d 413 (2000). "Whether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). "A finding is clearly erroneous if it leaves this Court with a definite and firm conviction that the trial court made a mistake." *People v Dillon*, 296 Mich App 506, 508; 822 NW2d 611 (2012).

A "defendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel . . . ." *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

> Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise. To establish an ineffective assistance of counsel claim, a defendant must show that (1) counsel's performance was below an objective standard of reasonableness under prevailing professional norms and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. [*People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012) (citations omitted).]

The "reasonable probability" standard can be satisfied by less than a preponderance of the evidence. *Trakhtenberg*, 493 Mich at 56.

The "reviewing court must not evaluate counsel's decisions with the benefit of hindsight," but should "ensure that counsel's actions provided the defendant with the modicum of representation" constitutionally required. *People v Grant*, 470 Mich 477, 485; 684 NW2d 686 (2004), citing *Strickland v Washington*, 466 US 668, 689; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "Defense counsel is given wide discretion in matters of trial strategy because many calculated risks may be necessary in order to win difficult cases." *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008). Thus, there is a "strong presumption that trial counsel's performance was strategic," and "[w]e will not substitute our judgment for that of counsel on matters of trial strategy[.]" *Id*. at 242-243. "Yet a court cannot insulate the review of counsel's performance by calling it trial strategy." *Trakhtenberg*, 493 Mich at 52. "The inquiry into whether counsel's performance was reasonable is an objective one and requires the reviewing

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

court to determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012) (quotation marks and citation omitted). Accordingly, the reviewing court must consider the range of potential reasons that counsel might have had for acting as he or she did. *Id*.

Defendant argues that Wilson was ineffective as his trial counsel because Wilson failed to call any witnesses in defendant's defense. An attorney's decision regarding whether to call a witness is presumed to be a matter of trial strategy. *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015). Defense counsel's "failure to a call a witness is only considered ineffective assistance if it deprived the defendant of a substantial defense. A substantial defense is one that could have affected the outcome of the trial." *Id*. (citation omitted). "Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

Defendant failed to produce any affidavits from potential witnesses stating what they would have testified to at trial. Defendant merely stated in his own affidavit that an unnamed witness could have testified that Schmelling drank alcohol daily and that Schmelling had been assaultive to defendant in the past. This unnamed witness was not an eyewitness to the event that occurred in Schmelling's apartment on December 23, 2016. Schmelling's potential character for being aggressive toward defendant was not an issue at trial. Thus, failure to call this one unnamed witness who would have testified about Schmelling's past behavior did not deprive defendant of a substantial defense. See *Putman*, 309 Mich App at 248. Because the unnamed witness would not have provided a substantial defense to defendant, Wilson's failure to call him or her as a witness was not ineffective assistance of counsel.

Defendant also argues that Wilson was ineffective as defendant's trial counsel because he failed to effectively attack Schmelling's credibility at trial. Specifically, defendant argues that Wilson should have asked Schmelling more questions about whether the entry door to his apartment was locked, why he thought he needed to tell the 911 operator that he had been drinking the night of the incident, and about Schmelling's preliminary examination testimony that defendant walked in and out of Schmelling's apartment without incident before the door to Schmelling's entry door was broken. Defendant argues that these failures rise to the level of ineffective assistance of counsel because without asking these questions Wilson did not adequately attempt to impeach Schmelling or call his credibility as a witness into question.

Wilson, however, based his entire trial strategy on attacking Schmelling's credibility. Throughout the trial, Wilson repeatedly insinuated that Schmelling was a liar and argued that Schmelling's version of events could not be trusted. Specifically, in his opening statement, Wilson stated that Schmelling wanted to kick defendant out of the apartment complex, called Schmelling a liar, and concluded by saying "[s]o after you hear the evidence and everything else, I want you to take that credibility from a liar and what's really going on here and come back with a verdict of not guilty for my client." Wilson continued this strategy when cross examining Schmelling.

When cross examining Schmelling, Wilson pointed out that Schmelling's testimony at trial and at the preliminary examination were inconsistent. Specifically, Schmelling stated that the entry door to his apartment was locked at trial, but he testified that it was unlocked at the preliminary examination. Wilson also got Schmelling to admit that at the preliminary examination he testified that he lied to the police when he was interviewed immediately after the incident in his apartment. Finally, Wilson called into question why Schmelling told the 911 operator that he had been drinking the night of December 23, 2016, how Schmelling could identify defendant without knowing what defendant was wearing, how Schmelling kept his telephone in his hands when the door fell on Schmelling, and why he did not testify at trial that defendant entered and exited his apartment without incident before Schmelling's door was kicked down like he had at the preliminary examination. Wilson also elicited testimony from Marco D'Angelo, the police officer who responded to Schmelling's 911 call, that he asked Schmelling to say what happened in Schmelling's written statement of events immediately after the incident. D'Angelo acknowledged that it would make his job harder if Schmelling did not tell the truth.

Wilson also attacked Schmelling's credibility in closing argument. Specifically, Wilson argued that the jury should believe Schmelling's testimony from the preliminary examination rather than his testimony at trial, because the preliminary examination happened much closer to the incident in Schmelling's apartment than trial did. Wilson also argued that Schmelling should have been able to tell what defendant was wearing and that Schmelling's statement that he had his telephone in his hands throughout the entire incident was a lie. Wilson concluded his closing argument by stating that Schmelling "admitted that he's a liar, he's a liar. Okay? And his lies are going to put my client – convict him of home invasion first-degree."

The record shows that Wilson made repeated attempts to impeach Schmelling and to call his credibility as a witness into question. Defendant argues on appeal that Wilson did not emphasize the correct facts or ask the correct questions to impeach Schmelling or call his credibility as a witness into question. Wilson's decisions regarding what questions to ask and facts to emphasize to accomplish this same goal, however, were surely strategic decisions. *People v Davis*, 250 Mich App 357, 368-369; 649 NW2d 94 (2002). Furthermore, Wilson's attempts to impeach Schmelling and call his credibility as a witness into question were not unreasonable. Thus, Wilson was not ineffective as defendant's trial counsel for failing to effectively impeach Schmelling.

Finally, defendant also argues that Wilson was ineffective as his trial counsel for preventing defendant from testifying at trial. "A defendant's right to testify in his own defense stems from the Fifth, Sixth, and Fourteenth amendments of the United States Constitution." *People v Boyd*, 470 Mich 363, 373; 682 NW2d 459 (2004). A defendant's credibility may be impeached when he takes the stand in his own defense. *People v Fields*, 450 Mich 94, 110; 538 NW2d 356 (1995). Furthermore, trial counsel's advice to a defendant regarding whether to testify in his or her own defense is presumed to be a matter of trial strategy. *People v Tommolino*, 187 Mich App 14, 17; 466 NW2d 315 (1991). The decision of whether to testify at trial, however, ultimately remains with the defendant. *People v Bonilla-Machado*, 489 Mich 412, 419; 803 NW2d 217 (2011).

-4-

Defendant asserts that Wilson prevented defendant from testifying in his own defense. The record, however, shows that it was defendant's decision to not testify at trial. The trial judge and Wilson both voir dired defendant at trial to ensure that it was defendant's decision to not testify in his own defense. Defendant repeatedly stated that it was his own decision to not testify at trial. While defendant asserted that Wilson was advising him to not testify at trial because his testimony might incriminate him, defendant also repeatedly acknowledged that it was his own decision to not testify. The record does not contain any indication that Wilson coerced defendant into not testifying at trial or that it was not actually defendant's decision to not testify at trial.

Defendant has similarly failed to present sufficient evidence to overcome the presumption that Wilson's advice that defendant should not testify at trial was strategic. While defendant has asserted that he would have testified to a different series of events at trial than Schmelling, it is unknown what the prosecution would have uncovered on cross-examination of defendant. As our Supreme Court held in *Bonilla-Machado*, 489 Mich App at 421, "[a]nything defendant might have said on the stand would have been subject to cross-examination designed for use against him." Thus, in light of the facts on the record and defendant's statements at trial, defendant was not denied his right to testify and Wilson was not ineffective as defendant's trial counsel for advising defendant not to testify at trial.

## III. PROSECUTORIAL ERROR[2]

Defendant argues that the prosecutor improperly vouched for Schmelling's credibility and denigrated defendant's character during closing arguments. Defendant also argues that Wilson was ineffective as his trial counsel for failing to object to the prosecutor's improper statements. We disagree.

"[T]o preserve an issue of prosecutorial misconduct, a defendant must contemporaneously object and request a curative instruction." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Defendant failed to object to any of the prosecutor's comments during closing arguments and concedes as much in his brief on appeal. Thus, the issue is unpreserved.

To properly preserve a claim of ineffective assistance of counsel, a defendant must move for either a new trial or a *Ginther* hearing in the trial court; failure to make any such motion "ordinarily precludes review of the issue unless the appellate record contains sufficient detail to support the defendant's claim." *People v Sabin (On Second Remand)*, 242 Mich App 656, 658-659; 620 NW2d 19 (2000). After trial and sentencing, defendant moved for a *Ginther* hearing

---

[2] As this Court noted in *People v Cooper*, 309 Mich App 74, 88; 867 NW2d 452 (2015), although the term "prosecutorial misconduct" has become a term of art often used to describe *any* error committed by the prosecution, claims of inadvertent error by the prosecution are "better and more fairly presented as claims of 'prosecutorial error,' with only the most extreme cases rising to the level of 'prosecutorial misconduct.' "

and a new trial in the trial court. The trial court denied defendant's motions for a *Ginther* hearing and a new trial. Thus, the issue is preserved.

"Generally, a claim of prosecutorial misconduct is a constitutional issue that is reviewed de novo, but a trial court's factual findings are reviewed for clear error." *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008). Unpreserved claims of prosecutorial misconduct, however, are reviewed for plain error affecting substantial rights, with reversal "warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Bennett*, 290 Mich App at 475-476 (quotation marks and citations omitted).

> To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice. [*People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999) (quotation marks, citations, and brackets omitted).]

In the instant context, prejudice "requires a showing . . . that the error affected the outcome of the lower court proceedings." *People v Chelmicki*, 305 Mich App 58, 69; 850 NW2d 612 (2014) (quotation marks and citation omitted). "[A]llegations of prosecutorial misconduct are considered on a case-by-case basis, and the reviewing court must consider the prosecutor's remarks in context." *Bennett*, 290 Mich App at 475, citing *People v Akins*, 259 Mich App 545, 562; 675 NW2d 863 (2003).

Regardless of whether a claim of ineffective assistance is duly preserved, if the trial court did not hold a *Ginther* hearing, "our review is limited to the facts on the record." *Wilson*, 242 Mich App at 352. "Whether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *Trakhtenberg*, 493 Mich at 47. "A finding is clearly erroneous if it leaves this Court with a definite and firm conviction that the trial court made a mistake." *Dillon*, 296 Mich App at 508.

Prosecutorial comments must be viewed "in light of defense arguments and the relationship they bear to the evidence admitted at trial," *Brown*, 279 Mich App at 135 (citation omitted), and the propriety of such comments is dependent on "the particular facts of each case," *People v Callon*, 256 Mich App 312, 330; 662 NW2d 501 (2003), citing *People v Johnson*, 187 Mich App 621, 625; 468 NW2d 307 (1991). Because "[t]he goal of a defense objection to improper remarks by the prosecutor is a curative instruction," appellate review of such remarks is generally precluded where the defendant failed to request a curative instruction "unless the prejudicial effect of the remark[s] was so great that it could not have been cured by an appropriate instruction." *People v Cross*, 202 Mich App 138, 143; 508 NW2d 144 (1993) (citations omitted); see also *People v Stanaway*, 446 Mich 643, 687; 521 NW2d 557 (1994) (noting that a defendant's failure to timely object to improper remarks by the prosecution deprives the trial court of an opportunity to administer a curative instruction). Likewise, reversal

is unwarranted where a "curative instruction could have alleviated any prejudicial effect." *Callon*, 256 Mich App at 329-330 (citations omitted).

Although "[a] prosecutor may not vouch for the credibility of his witnesses by suggesting that he has some special knowledge of [the witness's] truthfulness," it is proper for a prosecutor to "argue from the facts that a witness should be believed." *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009) (quotation marks and citations omitted). Contrary to defendant's argument, the prosecutor did not improperly vouch for Schmelling's credibility. Instead, the prosecutor based his comments on the facts and testimony that had been admitted into evidence at trial. Specifically, the prosecutor stated that Schmelling could be believed because he told the 911 operator that he had been drinking without any need to do so. The prosecutor also pointed out to the jury that Schmelling testified that he did not know if any of defendant's punches actually made contact with him and that he did not see what defendant was wearing. These observations were based on the record and did not imply that the prosecutor had any special knowledge of defendant's truthfulness. The prosecutor's comments were proper because they were made during closing arguments, regarding a prosecution witness, and Schmelling's credibility was vitally important to determining defendant's guilt or innocence because he was the only eyewitness to the assault in his apartment. See *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004) ("[A] prosecutor may comment on his own witnesses' credibility during closing argument, especially when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes."). The prosecutor's statements about defendant being drunk were similarly proper because they were based on Schmelling's testimony that defendant was drunk the night of the incident.

Even if the prosecutor's comments did improperly suggest that the prosecutor had special knowledge regarding the victim's credibility, reversal would be unwarranted. "Curative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements[.]" *Unger (On Remand)*, 278 Mich App at 235, citing *People v Humphreys*, 24 Mich App 411, 414; 180 NW2d 328 (1970). A jury is presumed to follow its instructions, *Unger (On Remand)*, 278 Mich App at 235, and the prejudice from improper prosecutorial comments is dispelled if the trial court gives proper jury instructions that would cure any prejudice, *Callon*, 256 Mich App at 330-331. Accordingly, any prejudice to defendant from the prosecutor's comments was cured when the trial court instructed the jury that "[t]he lawyers statements and arguments are not evidence. They are only meant to help you understand the evidence and each side's legal theory. You should only accept things the lawyers say that are supported by the evidence or by your own common sense and general knowledge." Thus, the prosecutor's statements during closing arguments were not prosecutorial misconduct. Finally, because the prosecutor's statements during closing arguments were not prosecutorial misconduct, Wilson was not ineffective as defendant's trial counsel for failing to object to the prosecutor's comments. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.").

## IV. SUFFICIENCY OF THE EVIDENCE

Defendant argues that there was insufficient evidence to convict him of first-degree home invasion because Schmelling was not a credible witness. We disagree.

-7-

Challenges to the sufficiency of the evidence are reviewed de novo to determine if any rational trier of fact could determine that the essential elements of the crime were proven beyond a reasonable doubt. *Lockett*, 295 Mich App at 180. All conflicts in the evidence are resolved in favor of the prosecution. *Id*. "Circumstantial evidence and reasonable inferences drawn from it may be sufficient to prove the elements of the crime." *People v Wilkens*, 267 Mich App 728, 738; 705 NW2d 728 (2005). On appeal, "[t]his Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v Kanaan*, 278 Mich App 594, 618-619; 751 NW2d 57 (2008). Finally, to sustain a conviction, due process requires sufficient evidence to justify a rational trier of fact finding guilt beyond a reasonable doubt. *People v Breck*, 230 Mich App 450, 456; 584 NW2d 602 (1998). Questions of constitutional law are reviewed de novo. *Trakhtenberg*, 493 Mich at 47.

Issues of witness credibility are for the jury to decide. *People v Lemmon*, 456 Mich 625, 642; 576 NW2d 129 (1998).

> Questions regarding credibility are not sufficient grounds for relief unless the testimony contradicts indisputable facts or laws, the testimony is patently incredible or defies physical realities, the testimony is material and . . . so inherently implausible that it could not be believed by a reasonable juror, or the testimony has been seriously impeached and the case is marked by uncertainties and discrepancies. [*People v Solloway*, 316 Mich App 174, 183; 891 NW2d 255 (2016) (citation and quotation marks omitted; alteration in original).]

If the defendant cannot make this showing then this Court must defer to the jury's credibility determinations. See *Lemmon*, 456 Mich at 642; *Solloway*, 316 Mich App at 183.

First-degree home invasion, MCL 750.110a(2), has three elements:

Element One: The defendant *either*:

> 1. breaks and enters a dwelling or

> 2. enters a dwelling without permission.

Element Two: The defendant *either*:

> 1. intends when entering to commit a felony, larceny, or assault in the dwelling or

> 2. at any time while entering, present in, or exiting the dwelling commits a felony, larceny, or assault.

Element Three: While the defendant is entering, present in, or exiting the dwelling, *either*:

> 1. the defendant is armed with a dangerous weapon or

2. another person is lawfully present in the dwelling. [*People v Wilder*, 485 Mich 35, 43; 780 NW2d 265 (2010).]

This Court has defined assault as "an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery." *People v Cameron*, 291 Mich App 599, 614; 806 NW2d 371 (2011) (quotation marks and citation omitted). A battery, meanwhile, is "an intentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person." *Id*. (quotation marks and citation omitted).

Schmelling testified that defendant and his unnamed friend broke through the entry door to his apartment and attempted to kick and punch him. Schmelling could not remember if any of the kicks or punches actually did hit him because he was using the front door to his apartment as a shield after he fell through his closet door. Wilson impeached Schmelling's testimony and cast some doubt on Schmelling's version of events, but Schmelling's testimony was not seriously impeached or so inherently implausible that it could not be believed by a reasonable juror. See *Lemmon*, 456 Mich at 642; *Solloway*, 316 Mich App at 183. Furthermore, when D'Angelo arrived at Schmelling's apartment, he saw that the door to Schmelling's apartment was on the floor and broken off its hinges. D'Angelo also saw a second door in Schmelling's apartment that appeared broken, but he did not remember if the second broken door led to a closet. D'Angelo's observations supported Schmelling's version of events. Thus, when viewing the evidence in the light most favorable to the prosecution, a rational jury could find beyond a reasonable doubt that the evidence was sufficient to support the jury's verdict that defendant was guilty of first-degree home invasion. Because there was sufficient evidence to convict defendant of first-degree home invasion, defendant's conviction did not violate his right to due process. *Breck*, 230 Mich App at 456.

## V. JURY INSTRUCTIONS

Defendant argues that the trial court erred by denying his request for a third-degree home invasion jury instruction because it is a necessarily included lesser offense of first-degree home invasion. We disagree.

"To preserve an instructional error for review, a defendant must object to the instruction before the jury deliberates." *People v Gonzalez*, 256 Mich App 212, 225; 663 NW2d 499 (2003). Defendant requested a third-degree home invasion jury instruction before the jury deliberated on the grounds that the underlying misdemeanor for third-degree home invasion was malicious destruction of property. Defendant failed to argue for a third-degree home invasion instruction based on misdemeanor assault. The trial judge denied defendant's request and did not give the jury a third-degree home invasion instruction. Thus, the issue of whether the trial court should have given a jury instruction on third-degree home invasion based on malicious destruction of property is preserved. Defendant's argument that the jury should have received a jury instruction on third-degree home invasion based on misdemeanor assault, however, is unpreserved.

Jury instructions involving questions of law are reviewed de novo. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006). A trial court's determination regarding whether a jury

instruction is applicable to the facts of a case, however, is reviewed for an abuse of discretion. *Id.* "An abuse of discretion occurs when the trial court renders a decision falling outside the range of principled decisions." *People v Powell*, 303 Mich App 271, 276-277; 842 NW2d 538 (2013) (citation and quotation marks omitted).

Unpreserved issues are reviewed for plain error affecting substantial rights, with reversal "warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Bennett*, 290 Mich App at 475-476 (quotation marks and citations omitted).

> To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice. [*Carines*, 460 Mich at 763 (quotation marks, citations, and brackets omitted).]

In the instant context, prejudice "requires a showing . . . that the error affected the outcome of the lower court proceedings." *Chelmicki*, 305 Mich App at 69 (quotation marks and citation omitted).

"A criminal defendant is entitled to have a properly instructed jury consider the evidence against him. The jury instructions must include all elements of the crime charged, and must not exclude from jury consideration material issues, defenses or theories if there is evidence to support them." *People v Armstrong*, 305 Mich App 230, 239-240; 851 NW2d 856 (2014) (citations and quotation marks omitted). Furthermore, "[t]he trial court may issue an instruction to the jury if a rational view of the evidence supports the instruction." *Id*.

The jury was only provided with instructions for first-degree home invasion based on the predicate offense of assault. First-degree home invasion, MCL 750.110a(2), has three elements:

Element One: The defendant *either*:

> 1. breaks and enters a dwelling or

> 2. enters a dwelling without permission.

Element Two: The defendant *either*:

> 1. intends when entering to commit a felony, larceny, or assault in the dwelling or

> 2. at any time while entering, present in, or exiting the dwelling commits a felony, larceny, or assault.

Element Three: While the defendant is entering, present in, or exiting the dwelling, *either*:

-10-

1. the defendant is armed with a dangerous weapon or

2. another person is lawfully present in the dwelling. [*Wilder*, 485 Mich at 43.]

This Court has defined assault as "an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery." *Cameron*, 291 Mich App at 614 (quotation marks and citation omitted). A battery, meanwhile, is "an intentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person." *Id*. (quotation marks and citation omitted).

Defendant argued that the jury should also have been provided an instruction on third-degree home invasion based on the predicate misdemeanor of malicious destruction of property at trial. Third-degree home invasion, MCL 750.110a(4), has two elements:

Element One: The defendant *either*:

1. breaks and enters a dwelling or

2. enters a dwelling without permission.

Element Two: The defendant:

1. intends when entering to commit a misdemeanor in the dwelling, or

2. at any time while entering, present in, or exiting the dwelling commits a misdemeanor, or

3. while entering, present in, or exiting the dwelling violates any of the following ordered to protect a named person or persons:

a. probation term or condition, or

b. parole term or condition, or

c. personal protection order term or condition, or

d. bond or bail condition or any condition of pretrial release. [*Wilder*, 485 Mich at 43-44.]

Misdemeanor malicious destruction of property, MCL 750.377a(1), requires a defendant to intend to injure or destroy the personal property of another that is worth less than $1,000. See MCL 750.377a(1)(c), (d); *People v Nelson*, 234 Mich App 454, 459; 594 NW2d 114 (1999).

Defendant argues that the trial court erred by denying his request for a third-degree home invasion jury instruction because it is a necessarily included lesser offense of first-degree home invasion. The statutory basis for necessarily included lesser offenses is found in MCL 768.32(1), which our Supreme Court interpreted as permitting "the trier of fact to find a defendant guilty of

-11-

a lesser offense if the lesser offense is necessarily included in the greater offense." *Wilder*, 485 Mich at 41. "A lesser offense is necessarily included in the greater offense when the elements necessary for the commission of the lesser offense are subsumed within the elements necessary for the commission of the greater offense." *Id*. Finally, "a requested instruction on a necessarily included lesser offense is proper if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it." *People v Cornell*, 466 Mich 335, 357-358; 646 NW2d 127 (2002).

Our Supreme Court examined whether third-degree home invasion is a necessarily included lesser offense of first-degree home invasion in *Wilder*, 485 Mich at 37. In *Wilder*, the defendant entered an acquaintance's home without permission while the homeowner was present and unplugged the television. *Wilder,* 485 Mich at 38. When the defendant was asked to stop, he raised his shirt and showed that he had a gun in his waistband. *Id*. The defendant then left the house with the television. *Id*. The defendant was charged with first-degree home invasion based on the underlying offense of larceny, but the trial court convicted him of third-degree home invasion. *Id*. On appeal, the defendant in *Wilder* argued that third-degree home invasion was a cognate offense, not a necessarily included lesser offense of first-degree home invasion. *Id*.

In *Wilder*, our Supreme Court found that when determining whether an offense is a necessarily included lesser offense, a court should "confine its analysis to the elements at issue in [the] case." *Wilder*, 485 Mich at 44. Accordingly, courts must examine the specific elements of first-degree home invasion *as charged* to determine whether third-degree home invasion is a necessarily included lesser offense in a specific case. *Id*. at 44-45. Because the underlying offense at issue in *Wilder* was larceny, which can be either a misdemeanor or a felony, the defendant's conviction for third-degree home invasion based on an underlying misdemeanor of larceny was a necessarily included lesser offense of first-degree home invasion based on an underlying larceny. *Id*. at 46-47.

Here, defendant was charged with first-degree home invasion based on the underlying offense of assault. At trial, defendant requested a third-degree home invasion jury instruction based on misdemeanor malicious destruction of property. The elements necessary for the commission of third-degree home invasion based on malicious destruction of property are not necessary for first-degree home invasion based on assault because assault does not require the destruction of property that malicious destruction of property does. Thus, third-degree home invasion based on malicious destruction of property is not a necessarily included lesser offense of first-degree home invasion based on assault. See *Wilder*, 485 Mich at 46-47. Furthermore, a jury instruction on third-degree home invasion was unnecessary in this case because defendant failed to contest whether Schmelling was in his apartment on December 23, 2016, when his entry door was broken down. Schmelling's presence was the factor that elevated defendant's offense to first-degree home invasion, but defendant failed to contest it. Because defendant failed to contest the single factor that elevated his offense to first-degree home invasion he was not entitled to a jury instruction on third-degree home invasion. See *Cornell*, 466 Mich at 364.

Defendant's argument on appeal, however, could be construed as arguing that defendant should have received a third-degree home invasion jury instruction based on misdemeanor assault. Defendant failed to make this argument before the trial court, however, so the issue is unpreserved. See *Gonzalez*, 256 Mich App at 225. Unpreserved issues are reviewed for plain

error affecting substantial rights, with reversal "warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Bennett*, 290 Mich App at 475-476 (quotation marks and citations omitted).

"[U]nder MCL 750.110a(2), both misdemeanor and felony assaults may properly be charged as crimes underlying first-degree home invasion." *People v Sands*, 261 Mich App 158, 163-164; 680 NW2d 500 (2004). When the underlying offense is an assault, therefore, the only difference between first- and third-degree home invasion is that first-degree home invasion requires the additional element that the defendant be armed with a dangerous weapon or that another person is lawfully present in the dwelling while the defendant is in the dwelling. See MCL 750.110a(2), (4); *Wilder*, 485 Mich at 43. Thus, third-degree home invasion based on misdemeanor assault is a necessarily included lesser offense of first-degree home invasion based on assault. See *Wilder*, 485 Mich at 46-47.

A jury instruction on third-degree home invasion, however, was unnecessary in this case because defendant failed to contest whether Schmelling was in his apartment on December 23, 2016, when his entry door was broken down. Schmelling's presence was the factor that elevated defendant's offense to first-degree home invasion, but defendant failed to contest it. Thus, defendant was not entitled to a jury instruction on third-degree home invasion because the single factor that elevated his offense to first-degree home invasion was not disputed. See *Cornell*, 466 Mich at 364. Finally, even if the trial court erred in denying defendant's request for a third-degree home invasion jury instruction, it did not plainly err by doing so because defendant has not shown that he was actually innocent or that the error affected the outcome of the lower court proceedings. See *Chelmicki*, 305 Mich App at 69; *Bennett*, 290 Mich App at 475-476.

Affirmed.

/s/ David H. Sawyer
/s/ Colleen A. O'Brien
/s/ Anica Letica