*365 CORRIGAN, C.J.
In this case, we consider whether a defendant must testify in order to preserve for appellate review a challenge to a trial court’s ruling in limine allowing evidence that the defendant exercised his Miranda[1] right to remain silent. In Luce v United States, 469 US 38, 43; 105 S Ct 460; 83 L Ed 2d 443 (1984), the United States Supreme Court held that a defendant must testify to preserve for appeal a challenge to a ruling in limine involving impeachment with prior convictions. We adopted the Luce rule in People v Finley, 431 Mich 506; 431 NW2d 19 (1988) (opinions by Riley, C.J., and by Brickley, J., concurring in part),[2] which also involved impeachment by prior convictions.
Because the same reasons for requiring a defendant to testify to preserve a challenge to pretrial evidentiary rulings in Luce and Finley apply in the circumstances of this case, we extend the rule from Luce and Finley to the errors alleged here. We hold that defendant was required to testify to preserve for review his challenge to the trial court’s ruling in limine allowing the prosecutor to admit evidence of defendant’s exercise of his Miranda right to remain silent. Because the statement at issue in this case would have been properly admissible in one context, defendant’s failure to testify precludes us from being able to determine whether the trial court’s ruling was erroneous and, if so, whether the error requires reversal. We thus affirm the judg *366 ment of the Court of Appeals holding that defendant was required to testify to preserve his challenge for appellate review.
I. UNDERLYING FACTS AND PROCEDURAL HISTORY
On June 14, 1997, the twelve-year-old victim attended a barbeque at a neighbor’s apartment in the building where defendant lived. The victim testified that defendant grabbed her at the barbeque, took her to his apartment, and had sexual intercourse with her. She told her friend, an eleven-year-old girl, about the assault immediately thereafter, but did not tell her father about it until a week later. Her father then called the police and took her for a medical examination. The results of the examination were inconclusive regarding penetration because of the interval between the alleged penetration and the examination.
Police arrested defendant shortly after the victim’s father reported the incident. Defendant furnished a statement to police after being advised of his Miranda rights. After defendant answered five or six questions, the police officer asked him, “When you last saw her [the victim], how many times did you have sex with her?” Defendant responded, “I am taking the fifth on that one.” The officer immediately ended the interrogation.
The prosecutor charged defendant with first-degree criminal sexual conduct, MCL 750.520b(l)(a) (sexual penetration of victim under thirteen years of age). Immediately before trial, defendant moved in limine to exclude that portion of his statement in which he asserted his Miranda right to remain silent. The prosecutor opposed the motion, arguing that the entire statement was admissible. The trial court ruled that defendant’s entire statement was admissible.
*367 Despite this ruling, the prosecutor never sought to admit defendant’s statement into evidence and did not refer to the statement during opening or closing argument. Defendant elected not to testify, but the record does not reflect the reason for his decision. Defendant’s brother testified that defendant had been with him at the apartment at the time of the alleged assault and that no assault occurred. The young female friend of the complainant testified that the victim told her about the assault immediately after it had occurred. The friend also testified that the victim was crying, her clothes were “messed up,” and she was missing a pair of shorts.
The jury convicted defendant of second-degree criminal sexual conduct, MCL 750.520c, and the trial court sentenced him to a ten- to fifteen-year term of imprisonment.
The Court of Appeals affirmed.[3] Defendant argued, inter alia, that his decision not to testify at trial was based on the trial court’s erroneous ruling in limine allowing the prosecutor to use the assertion of his Miranda right to remain silent against him. The Court of Appeals agreed that the trial court’s ruling was erroneous, but, citing Finley, held that reversal was not required because defendant did not testify and the evidence was never admitted. The Court declined to assume that defendant chose not to testify “out of fear of impeachment.” It also concluded that the evidence against defendant was overwhelming and that any error was harmless beyond a reasonable doubt.
We granted defendant’s application for leave to appeal.[4]
*368 II. STANDARD OF REVIEW
This case requires us to determine whether a defendant must testify in order to preserve for appellate review a challenge to a ruling in limine allowing admission of his exercise of his silence. We review de novo this question of law. People v Mendoza, 468 Mich 527, 531; 664 NW2d 685 (2003).
III. ANALYSIS
A. LUCE AND FINLEY
In circumstances analogous to the instant factual scenario, the United States Supreme Court held that a defendant must testify to preserve for appeal the issue of improper impeachment by prior convictions. Luce, supra at 43. In Luce, the petitioner sought to preclude the use of a prior conviction to impeach his testimony. The trial court ruled that the prior conviction was admissible under FRE 609(a). The petitioner did not testify and was convicted. Luce, supra at 39-40.
The Supreme Court upheld the convictions, citing numerous reasons for requiring the petitioner to testify to preserve his challenge to the pretrial evidentiary ruling. First, the Court reasoned that if the petitioner had testified and been impeached with the prior conviction, the trial court’s decision admitting the evidence would have been reviewable on appeal. Id. at 41. The Court recognized the difficulty inherent in reviewing an evidentiary ruling outside a factual context, particularly because FRE 609(a)(1) required a reviewing court to weigh the probative value of a prior conviction against its prejudicial effect. To perform this balancing test, the Court opined, a reviewing court must know the precise nature of the defendant’s testimony, which is unknown unless he testifies. Luce, supra at 41. The *369 Court rejected the notion that an offer of proof would be sufficient because a defendant’s trial testimony could differ from the proffer. Id. at n 5.
Second, the Court recognized that any possible harm from a trial court’s ruling in limine allowing impeachment with prior convictions is wholly speculative in the absence of the defendant’s testimony. The Court opined that such a ruling is subject to change depending on how the case unfolds at trial and that a court, exercising sound judicial discretion, could modify a previous ruling in limine. The Court also stated that without a defendant’s testimony, a reviewing court has no way of knowing whether the prosecutor would have sought to introduce the prior conviction for impeachment. For example, if the prosecutor’s case is strong and other means of impeachment are available, the prosecutor may choose not to use an arguably inadmissible prior conviction. Id. at 41-42.
Third, the Court reasoned that appellate courts cannot assume that an adverse pretrial ruling motivated a defendant’s decision not to testify. The Court rejected the notion that a defendant could commit to testifying if his motion is granted because such a commitment is relatively risk-free and difficult to enforce. Id. at 42.
In addition, the Court acknowledged the problem involving application of a harmless error analysis because “the appellate court could not logically term ‘harmless’ an error that presumptively kept the defendant from testifying.” Id. Thus, nearly every error would automatically require reversal. Finally, the Court opined that requiring defendants to testify enables reviewing courts to assess the effect of any erroneous impeachment in light of the entire record and tends to *370 discourage gamesmanship whereby a defendant’s motion operates solely to “plant” error requiring reversal on appeal. Id.
In Finley, a majority of this Court adopted the Luce rule. We observed that the purpose of the rule is to provide for meaningful appellate review of a ruling in limine allowing impeachment by prior convictions. Finley, supra at 512 (opinion of RILEY, C.J.). The lead opinion stated that “error does not occur until error occurs; that is, until the evidence is admitted.” Id. It further stated that even if an offer of proof is made and evidence is erroneously deemed admissible, error requiring reversal does not arise until the evidence is actually introduced. The lead opinion then reiterated the reasons stated in Luce favoring the rule requiring a defendant’s testimony to preserve the issue for appellate review. Id. at 512-513.
B. EXTENSION OF THE LUCE AND FINLEY RULE
Many courts have extended the rule announced in Luce and adopted in Finley to contexts other than those involving impeachment by prior convictions.[5] In United *371 States v Wilson, 307 F3d 596, 598 (CA 7, 2002), the defendant moved in limine to preclude the prosecutor from introducing evidence of his postarrest “selective silence.” After waiving his Miranda rights, the defendant answered a series of questions, but expressly refused to provide the name of his associate. Id. The *372 trial court granted the motion in part, ruling that the prosecution could not use the defendant’s silence against him in its case-in-chief. During trial, the defendant sought to admit evidence regarding the associate, but the court ruled that if defendant raised the matter, the prosecutor would be permitted to introduce evidence of the defendant’s refusal to name the associate during questioning. The defendant opted not to raise the issue. Id. at 598-600.
On appeal, the defendant argued that the trial court’s ruling allowing the prosecutor to introduce evidence of his “selective silence” violated his Fifth Amendment privilege against self-incrimination. Id. at 599. Relying on Luce and the line of cases extending the Luce holding beyond FRE 609, the court declined to review the defendant’s claim on the merits. The court stated that because the defendant exercised his right to refrain from introducing certain evidence at trial, he “cannot now attack a potential introduction of evidence by the government in response to his potential testimony.” Id. at 601.
United States v Bond, 87 F3d 695 (CA 5, 1996), also involved a defendant’s Fifth Amendment privilege against self-incrimination. In that case, the defendant challenged the magistrate’s ruling that if he testified regarding the terms of a plea bargain, he would waive his privilege against self-incrimination regarding all grounds asserted in his motion to withdraw his guilty plea. The appellate court determined that the same practical considerations as in Luce were present, including the difficulty inherent in determining whether the defendant’s testimony could be limited in accordance with his motion without actually hearing the testimony. The court recognized that other courts have refused to *373 limit, the Luce rule to Rule 609(a) situations and have instead applied the Luce rule in analogous contexts. Id. at 700-701.
C. APPLICATION OF THE LUCE RULE TO THE FACTS IN THIS CASE
As in Wilson and Bond, we must determine here whether to extend the Luce rule to defendant’s invocation of his Miranda right to remain silent. Defendant and the dissent contend that the logic of Luce and Finley does not apply because the alleged error has constitutional implications. The alleged errors in Wilson and Bond, however, also had constitutional implications. In fact, the purported errors in those cases involved the same constitutional right at issue in this case, i.e., the Fifth Amendment privilege against self-incrimination.
The dissent and defendant further fail to appreciate the constitutional implications present in Luce, Finley, and every case in which a defendant alleges that a trial court’s ruling effectively prevented him from testifying. A defendant’s right to testify in his own defense stems from the Fifth, Sixth, and Fourteenth amendments of the United States Constitution. Rock v Arkansas, 483 US 44, 51-52; 107 S Ct 2704; 97 L Ed 2d 37 (1987). Thus, a trial court’s ruling affecting a defendant’s right to testify necessarily has constitutional implications.[6] The lead opinion in Finley correctly stated, “A ruling in limine on impeachment by prior convictions does not present constitutional implications.” Finley, supra at 514. The effect of such a ruling on a defendant’s right to testify, however, does present constitutional implica *374 tions. Therefore, the distinction that the dissent attempts to draw between this case and Finley is illusory. Any ruling, even if on a mere evidentiary issue, necessarily affects a defendant’s constitutional rights if it has a chilling effect on the exercise of the right to testify.
Defendant further asserts that, because his invocation of his Miranda right to remain silent could never be admitted at trial, the trial court’s ruling in limine that his statement was admissible constituted error that could never be harmless. Defendant’s argument is premised on the erroneous assumption that his invocation of his privilege against self-incrimination could never be admissible. Under Doyle v Ohio, 426 US 610, 619; 96 S Ct 2240; 49 L Ed 2d 91 (1976), and People v Bobo, 390 Mich 355, 359; 212 NW2d 190 (1973), however, defendant’s “taking the fifth” statement would have been properly admissible in one context. The United States Supreme Court held in Doyle, supra at 619, “that the use for impeachment purposes of petitioners’ silence at the time of arrest and after receiving Miranda warnings, violate[s] the Due Process Clause of the Fourteenth Amendment.” The Court recognized, however, that “the fact of post-arrest silence could be used by the prosecution to contradict a defendant who testifies to an exculpatory version of events and claims to have told the police the same version upon arrest.” Id. at 619 n 11.
Similarly, in Bobo, this Court held that the prosecution could not introduce a defendant’s postarrest silence to impeach his exculpatory testimony at trial. Bobo, supra at 359. We cautioned, however, that this rule was not an absolute ban on the use of post-Miranda silence and stated that “[t]he fact that a witness did not make a statement may be shown only to *375 contradict his assertion that he did.”[7] Id.; see also People v Dennis, 464 Mich 567, 573 n 5; 628 NW2d 502 (2001), citing Doyle, supra at 619 n 11.
If defendant had offered exculpatory testimony at trial and claimed to have told his exculpatory story to the police in response to questioning, his silence would have been admissible for impeachment purposes. As this Court recently stated in Dennis, Doyle does not apply where “a defendant testifies to having earlier provided an exculpatory version of events to the police and the prosecution offers evidence of defendant’s silence to rebut such a claim.” Dennis, supra at 573 n 5.[8] Thus, defendant’s contention that his “taking the fifth” statement would never have been admissible is incorrect.[9] Rather, the statement’s admissibility would depend on the context in which the prosecutor had sought to admit it.[10]
*376 Because the admissibility of post -Miranda silence depends on the factual setting in which the prosecutor seeks to admit it, we are faced with the same problem encountered in Luce and Finley, i.e., that defendant’s claim of error is wholly speculative. Not only could the statement have been admitted to contradict a defendant who testified about an exculpatory version of events and claims to have told the police that version upon his arrest, but, as Luce suggests, it might not have been admitted at all, even if defendant had testified. As the Luce Court recognized, the trial court could have ultimately concluded that the statement was inadmissible, or the prosecution could have changed its trial strategy and not sought to admit the statement.
In addition, as Luce recognized, we cannot assume that the possible introduction of the “taking the fifth” statement motivated defendant’s decision not to testify. The Luce Court rejected the notion that appellate courts can properly discern the effect of a ruling in limine on a defendant’s trial strategy. Luce, supra at 42. Thus, it is equally possible that defendant simply chose to present his defense through his brother’s testimony, which contradicted the complainant’s allegations, rather than to testify himself and be subject to cross-examination. Because numerous factors undoubtedly influence a defendant’s decision whether to testify, we refuse to speculate regarding what effect, if any, a ruling in limine may have had on this decision.
Defendant cites State v Lamb, 84 NC App 569, 580-581; 353 SE2d 857 (1987), quoting United States v Lipscomb, 226 US App DC 312, 332; 702 F2d 1049 (1983), for the proposition that “when a defendant *377 seeks an advance ruling on admission of a prior conviction, it is reasonable to presume that the ruling will be an important factor in his decision whether to testify.” The Lamb court, however, failed to acknowledge that a rule allowing appeals based on evidence contested in limine but never introduced at trial is subject to abuse. For example, a defendant could move in limine to exclude a number of prior statements, all the while never intending to testify. The Luce Court recognized this potential for abuse, stating that its rule “will also tend to discourage making [motions] solely to ‘plant’ [error requiring reversal] in the event of conviction.” Luce, supra at 42. Thus, we find defendant’s reliance on Lamb unpersuasive.
Further, unlike the dissent, we appreciate the difficulty inherent in evaluating a trial court’s ruling on a motion in limine when the evidence is never actually admitted. The dissent would have us review defendant’s claim of error in a vacuum and engage in speculation regarding whether the statement would have been properly admissible. The speculative exercise that the dissent offers, post at 395-396, is exactly what we are seeking to avoid. Often, a factual record is necessary to determine the soundness of the trial court’s ruling if for no other reason than to conduct a harmless error analysis. Extension of the Luce and Finley rule to the instant circumstance ensures that appellate courts are not forced to entertain abstract allegations of error.
Because the practical considerations extant in Luce and Finley of evaluating theoretical error in the absence of a defendant’s testimony are also present in this case, we follow the lead of Wilson and Bond and extend the Luce rule to encompass alleged error implicating a defendant’s Fifth Amendment privilege against self- *378 incrimination. Thus, to preserve for appellate review a challenge to a trial court’s ruling in limine allowing into evidence a defendant’s exercise of his Fifth Amendment privilege, the defendant must testify at trial. Because the statement at issue in this case would have been properly admissible in one context, it is impossible to determine whether the trial court’s ruling was erroneous.[11] Accordingly, we are unable to review defendant’s allegation of error.
IV CONCLUSION
We conclude that defendant was required to testify to preserve for review his challenge to the trial court’s ruling in limine allowing the prosecutor to admit evidence of defendant’s exercise of his Miranda right to remain silent. Because the statement at issue in this case would have been properly admissible in one context, defendant’s failure to testify precludes us from being able to determine whether the trial court’s ruling was erroneous and, if so, whether the error requires reversal. Accordingly, we affirm the judgment of the Court of Appeals.[12]
Weaver Taylor, Young, and Markman, JJ., concurred with Corrigan, C.J.

 Miranda v Arizona, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

 Despite the dissent’s contention that we mischaracterize the holding of the Finley Court, post at 379-381, a majority of this Court in Finley adopted the rule announced in Luce. Justices Boyle and Griffin joined Chief Justice Riley’s lead opinion, and Justice Brickley concurred in the lead opinion’s adoption of the Luce rule, as the dissent correctly recognizes. Finley, supra at 526 (opinion by Brickley, J.). Contrary to the dissent’s assertion, we do not contend that Justice Brickley agreed with every aspect of the lead opinion, but rather, that he “concurred with the adoption of the rule as defined in Luce.” Post at 379.

 Unpublished opinion per curiam, issued September 15, 2000 (Docket No. 214097).

 467 Mich 920 (2002).

 Many of these cases involve federal rules of evidence other than FRE 609(a), the rule at issue in Luce. See, e.g., United States v Sanderson, 966 F2d 184, 190 (CA 6, 1992) (“[A]n appeal of a Rule 608(b) ruling is precluded where the defendant did not testify at trial.”); United States v Ortiz, 857 F2d 900, 906 (CA 2, 1988) (the defendant waived his challenge to the trial court’s adverse ruling in limine on Rule 404(b) motion by failing to insist on right to fully present “personal use” argument at trial); United States v Griffin, 818 F2d 97, 103-105 (CA 1, 1987) (“[T]o raise and preserve for review the claim of improperly constructing the Rule 403 balance, a party must obtain the order admitting or excluding the controversial evidence in the actual setting of the trial” and may not rely on a trial court’s mere ruling in limine.); United States v Weichert, 783 F2d 23, 25 (CA 2,1986) (By failing to testify at trial, challenge to the trial court’s ruling in hmine under Rule 608(b) was not preserved for *371 review.); United States v Johnson, 767 F2d 1259, 1270 (CA 8, 1985) (“Although Luce was decided under Fed. R. Evid. 609(a)(1), its logic applies with equal force to motions under Rule 404.”).
In addition, the dissent cites Professor Duane for the proposition that the United States Supreme Court has been “reluctant to give Luce any precedential value,” post at 386. To the contrary, the Court has rather recently accorded such value to Luce in Ohler v United States, 529 US 753, 759; 120 S Ct 1851; 146 L Ed 2d 826 (2000), a case in which the Court held that once a defendant—not the government—introduces evidence of a prior conviction, the defendant waives any right to appeal the trial court’s ruling in limine permitting the government to admit that conviction for purposes of impeachment. Moreover, although four justices dissented, concluding that Luce was inapplicable because the defendant had testified and thus the harm was not “wholly speculative,” Luce, supra at 41, those justices also appeared implicitly to recognize the importance of Luce-.
An appellate court can neither determine why a defendant refused to testify, nor compare the actual trial with the one that would have occurred if the accused had taken the stand. With unavoidable uncertainty about whether and how much the in limine ruling harmed the defendant, and whether it affected the trial at all, a rule allowing a silent defendant to appeal would require courts either to attempt wholly speculative harmless-error analysis, or to grant new trials to some defendants who were not harmed by the ruling, and to some who never even intended to testify. [Ohler, supra at 760-761. (Souter, J., dissenting).]
Although the dissent states that the United States Supreme Court in Ohler “begrudgingly” cited Luce, post at 389, nothing in Ohler’s majority or dissenting opinion supports that assertion. Further, our reliance on Ohler is not “misplaced.” Post at 389. Neither the majority nor the dissent in Ohler questioned Luce’s continuing validity. Rather, the Corut decided that Luce was inapplicable. Ohler simply does not state that the United States Supreme Court has been reluctant to accord Luce prece-dential effect.

 While the United States Supreme Court did not decide Rock until after it decided Luce, its decision in Rock made clear that a defendant’s challenge involving his right to testify in his own defense is one of constitutional magnitude.

 In People v Collier, 426 Mich 23, 39; 393 NW2d 346 (1986), this Court confined Bobo “to impeachment for and comment on silence at the time of arrest in the face of accusation.” See also People v Hackett, 460 Mich 202, 215 n 6; 596 NW2d 107 (1999).

 See also People v Sutton (After Remand), 436 Mich 575, 579; 464 NW2d 276 (1990) (“Where a defendant claims that he gave an exculpatory statement to the police after arrest and warnings, neither Bobo nor any federal constitutional authority would preclude impeachment with prior inconsistent conduct, including silence.”).

 We are not presented with a situation in which defendant’s statement would never have been admissible, and we express no opinion regarding whether a claim of error would be reviewable in that instance absent a defendant’s testimony at trial.

 For this reason, the dissent’s contention that our holding “requires the defendant to choose which constitutional right to give up, his Fifth Amendment right to post -Miranda silence or his Fifth Amendment right not to testify,” is misleading. Post at 391. Because a defendant may, in a certain circumstance, testify and properly be impeached with his post-Miranda silence without offending constitutional protections, he is not necessarily forced to give up either his Fifth Amendment privilege against self-incrimination or his Miranda right to remain silent. In fact, *376 this argument supports the notion that a defendant must testify in order to determine whether any error occurred at all.

 Although we review claims of error under the standard announced in People v Carines, 460 Mich 750, 763; 597 NW2d 130 (1999), that standard applies only when an error exists. Because defendant’s decision not to testify prevents us from being able to determine whether the trial court’s ruling was erroneous, the Cannes plain error standard is inapplicable.

 The dissent criticizes our opinion for declining to review the sentencing issue that defendant raised in his application for leave to appeal. Post at 398. Defendant has abandoned that issue by failing to address it in his brief on appeal in this Court. Steward v Panek, 251 Mich App 546, 558; 652 NW2d 232 (2002).