*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

LEMOND KINGSLEY BOYD,

      Defendant-Appellant.

UNPUBLISHED
December 17, 2019

No. 342166
Wayne Circuit Court
LC No. 16-008289-01-FC

Before: BECKERING, P.J., and BORRELLO and M. J. KELLY, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of second-degree murder, MCL 750.317, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced to 5 to 20 years' imprisonment for the second-degree murder conviction and two years' imprisonment for the felony-firearm conviction. For the reasons set forth in this opinion, we affirm defendant's convictions and sentences.

## I. BACKGROUND

This appeal arises from the shooting of the victim on August 12, 2016, in Detroit, Michigan. On that date, the victim went to chat with a friend named William Russell (Russell), while Russell was at work at a barbershop in Detroit, with two other barbers named Andreas Tate (Tate) and Antonio Johnson (Johnson). At approximately 4:30 p.m., defendant arrived at the barbershop to get a haircut. Defendant brought his two sons with him for haircuts. Russell cut the children's hair, and defendant sent the children back to his car to wait with his wife while Russell cut his hair. While defendant was getting his hair cut, the victim went outside to talk to a man named Sherman, who often ran errands and did small chores for the victim. For reasons not discussed in the record, the victim grew angry at Sherman, pulled a handgun out of his pocket, and attempted to shoot Sherman. The bullet missed Sherman and struck the windshield of defendant's car. The bullet went through the windshield and shattered the passenger side window of the car while defendant's wife and children were inside the vehicle.

After attempting to shoot Sherman, the victim returned to the barbershop. Testimony revealed that at that time, Russell and his coworkers were unsure whether they heard a gunshot.

-1-

However, within minutes of the victim firing the gun, defendant's wife and children came into the barbershop, crying and covered in glass. Defendant went outside to look at his car and came back in the barbershop. Russell and his coworkers attempted to get the victim to admit that he fired a gun outside the barbershop, but he continued to maintain that he did not fire the bullet that hit defendant's car. After Russell finished cutting defendant's hair, defendant snatched the barber's cape from his neck and stormed out of the barbershop.

Later that evening, defendant returned to the barbershop and knocked on the door. At that time, Russel, Tate, and the victim were in the barbershop. Defendant walked into the barbershop and immediately got into an argument with the victim. While defendant and the victim were arguing, Jackson walked into the barbershop. Jackson asked defendant and the victim to take their argument outside, and walked out the front door of the barbershop with them. Approximately two minutes later, Tate walked outside to make sure that the argument between defendant and the victim had not escalated further. Tate heard the victim apologizing to defendant and stating that he would pay for the damage to defendant's car.

While defendant and the victim were arguing, defendant's brother pulled up to the barbershop. Defendant's brother asked if the victim fired the bullet that hit defendant's car. Defendant confirmed that the victim fired the bullet, and defendant's brother told the victim, "You going to pay for that window; you understand what I'm saying?" Defendant's brother began yelling at the victim, but the victim walked away from the conversation. The victim walked down the street, and defendant followed him. Tate lost sight of defendant and the victim. Moments later, Tate heard multiple gunshots from down the street. Russell heard the gunshots and walked outside to see what happened. Russell saw the victim running up the street and noticed that he appeared to be "staggering around." The victim ran up to Tate and said, "[D]id ya'll [sic] see that?" Russell assumed that the victim had been shot, but could not see any obvious bullet wounds. The victim asked Tate to take him to the hospital and fainted in the doorway of the barbershop. Russell lifted the victim's shirt and saw a bullet wound in his side.

Russell, Tate, and Jackson drove the victim to a nearby hospital. While the men were loading the victim into a car, Russell noticed that defendant's car was still parked outside of the barbershop, but defendant was not outside. Defendant drove up in a different car and asked Russell if anyone had seen his car keys and cellular telephone. Russell told defendant that he had not seen defendant's car keys or cellular telephone, and defendant drove away. Russell, Tate, and Jackson drove the victim to the hospital, but the victim died from the gunshot wound soon after arriving at the hospital.

After an investigation of the events leading to the victim's death, a team of Detroit police officers arrested defendant in his home. As previously noted, defendant was convicted of second-degree murder, MCL 750.317, and felony-firearm, MCL 750.227b. Defendant was sentenced to 5 to 20 years' imprisonment for the second-degree murder conviction, and two years' imprisonment for the felony-firearm conviction. This appeal followed.

II. ANALYSIS

In his appeal, defendant argues that he was denied the effective assistance of counsel because defense counsel failed to call him to testify and essentially advised him not to testify in support of his defense.

"Whether the defendant received the effective assistance of counsel guaranteed him under the United States and Michigan Constitutions is a mixed question of fact and law." *People v Ackley*, 497 Mich 381, 388; 870 NW2d 858 (2015). Generally, when examining a defendant's claim of ineffective assistance of counsel, "this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Dixon-Bey*, 321 Mich App 490, 515; 909 NW2d 458 (2017). "Clear error exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). However, defendant failed to properly preserve this issue by moving for a new trial or *Ginther*[1] hearing in the trial court. *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009). Since defendant failed to preserve the issue, this Court's review is "limited to mistakes apparent on the record." *Id.*

To establish a claim of ineffective assistance of counsel, a defendant is required to demonstrate "that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). Defense counsel is presumed to be effective, *People v Frazier*, 478 Mich 231, 243; 733 NW2d 713 (2007), and defendant must be able to "overcome a strong presumption that counsel's performance constituted sound trial strategy," *People v Riley*, 468 Mich 135, 140; 659 NW2d 611 (2003).

A defendant has the constitutional right to testify on his own behalf. *People v Boyd*, 470 Mich 363, 373; 682 NW2d 459 (2004). Defense counsel was required to advise defendant of his right to testify, but "the ultimate decision whether to testify at trial remains with the defendant." *People v Bonilla-Machado*, 489 Mich 412, 419; 803 NW2d 217 (2011). Since defendant did not request a *Ginther* hearing in the trial court, this Court's review is "limited to mistakes that are apparent on the record." *People v Mack*, 265 Mich App 122, 125; 695 NW2d 342 (2005).

The evidence contained in the record reveals that defendant presented no evidence to support the argument that he was not informed of his right to testify at trial or that defense counsel advised him not to testify. At trial, the following exchange took place between defendant and the trial court:

> *The Court*: Do you understand that no matter what [defense counsel] thinks, this is . . . your decision alone to make?
>
> *Defendant Boyd*: Yes, ma'am.

* * *

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

*The Court*: And have you reached your own decision as to whether you will or will not testify?

*Defendant Boyd*: Yes, ma'am.

*The Court*: What is your choice, sir.

*Defendant Boyd*: No, ma'am.

*The Court*: You are not going to testify?

*Defendant Boyd*: No.

*The Court*: Has any[one] threatened you or forced you to get you to remain silent?

*Defendant Boyd*: No, ma'am.

*The Court*: You've made this decision freely and voluntarily because you believe it is in your best interest to not testify?

*Defendant Boyd*: Yes, ma'am.

The record does not contain further information regarding discussions that defendant may have had with defense counsel regarding defendant's right to testify. However, even if defense counsel did advise defendant not to testify, the decision whether to call a particular witness is a matter of trial strategy. *Payne*, 285 Mich App at 190. Defense counsel is afforded "wide discretion in matters of trial strategy because counsel may be required to take calculated risks to win a case." *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012). Defendant has presented no evidence to show that declining to call defendant as a witness was not sound trial strategy. Therefore, defendant has failed to meet his burden to show a "factual predicate" for his ineffective assistance of counsel claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

Since the record fails to provide any basis from which this Court could make a finding that defense counsel's performance fell below an objective standard of reasonableness, we conclude that trial counsel was not ineffective. Further, even if we were to presume trial counsel was ineffective, a presumption which would have to be concocted, we cannot find a basis on which defendant can, or has, demonstrated that he suffered prejudice. *Trakhtenberg*, 493 Mich at 51. Accordingly, defendant is not entitled to relief as he has failed to show that he was denied the effective assistance of counsel, or that but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different. *Id*.

Defendant also makes two further claims of ineffective assistance of counsel, which are unrelated to the claim that defense counsel failed to call defendant as a witness or advised defendant not to testify at trial. First, defendant contends that defense counsel was ineffective for spending an inordinate amount of time questioning a medical examiner during trial. Second, defendant argues that defense counsel misrepresented facts and law during closing argument. Defendant has waived review of these issues on appeal because he did not present them to this

Court in his statement of the questions presented. MCR 7.212(C)(5); *People v Fonville*, 291 Mich App 363, 383; 804 NW2d 878 (2011). Therefore, these issues are not properly before this Court and need not be addressed. Even if we were to consider them we can find no error, nor can defendant demonstrate any prejudice arising from either argument.

Affirmed.

/s/ Jane M. Beckering
/s/ Stephen L. Borrello
/s/ Michael J. Kelly