*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

VINCENT EARL JOHNSON,

        Defendant-Appellant.

UNPUBLISHED
April 2, 2020

No. 344024
Macomb Circuit Court
LC No. 2016-004337-FC

Before: BECKERING, P.J., and SAWYER and GADOLA, JJ.

PER CURIAM.

Defendant, Vincent Earl Johnson, appeals as of right his jury trial convictions of first-degree premeditated murder, MCL 750.316(1)(a), assault with intent to commit murder (AWIM), MCL 750.83, and two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to life imprisonment without the possibility of parole for the first-degree murder conviction, 25 to 40 years' imprisonment for the AWIM conviction, and two years' imprisonment for each of the felony-firearm convictions. We affirm.

## I. FACTUAL BACKGROUND

This action arises out of the vicious assault of Misty Battisti-Phillips, defendant's ex-wife, and the murder of Battisti-Phillips' boyfriend, Demetrius Johnson,[1] in Warren, Michigan. On August 27, 2016, Battisti-Phillips and Johnson were at the home of Battisti-Phillips's cousin. At approximately 12:00 a.m. on August 28, 2016, Battisti-Phillips called defendant to ask him to return her car, which defendant had borrowed to visit his brothers in Detroit. After getting off of the telephone with defendant, Battisti-Phillips received a call from a friend, who told her that his car had broken down. The friend asked Battisti-Phillips if she could pick him up. Battisti-Phillips explained that defendant had her car, but told her friend that he could likely walk to the house

---

[1] There does not appear to be a familial relation between defendant and Demetrius Johnson.

where defendant was visiting his brothers and see if defendant would be willing to drive him. Soon after the conversation ended, Battisti-Phillips's friend called again, reporting that he had found defendant, but defendant was aggravated and did not want to drive him anywhere. Battisti-Phillips told defendant that he could bring her car back and that she would go pick up her friend at a later time. Battisti-Phillips later spoke to defendant on the telephone again, and defendant told her that he was on his way with her car and that her friend was not with him.

Battisti-Phillips went out to the front porch of her cousin's house to wait for defendant to arrive with her car. She did not tell Johnson, who was inside the house, that defendant was on his way. She sat on the porch for approximately 10 to 15 minutes after speaking to defendant on the telephone and did not notice when defendant walked up behind her. Battisti-Phillips was looking down at her cellular telephone when she felt "something just bash [her] in [her] head." When she stood and turned toward the steps leading to the porch, defendant began repeatedly stabbing Battisti-Phillips in the back and shoulders with a knife. Battisti-Phillips fell to the ground and landed facedown. She looked over and saw defendant's shoes, and eventually turned her head and saw him. She attempted to roll over and protect her head and face with her hands as defendant continued to stab, punch, and kick her. Defendant stabbed Battisti-Phillips in the face, nearly stabbed her in the eye, and attempted to stab her in the neck.

As defendant's assault continued, Battisti-Phillips heard Johnson open the front door and scream at defendant, yelling at him to get away from Battisti-Phillips. Defendant stood up, giving Battisti-Phillips an opportunity to try to escape. As Johnson ran out of the house, defendant turned toward him. Before Battisti-Phillips could get up and move away from defendant, Johnson fell on top of her and knocked her back to the ground. Battisti-Phillips could feel defendant stabbing Johnson as he lay on top of her. After a moment, defendant stopped stabbing Johnson, and Battisti-Phillips looked up to see defendant holding a handgun. Battisti-Phillips kicked the gun, causing defendant to drop it. Battisti-Phillips was unsure whether defendant fired the gun, but two neighbors and two individuals who were in the house at the time of the attack testified to seeing or hearing gunshots. Johnson got up off of Battisti-Phillips and attempted to chase defendant, but fell on the grass near the front porch of the house. Defendant then fled the area.

Officer Todd Benczkowski of the Warren Police Department arrived at the scene of the incident at approximately 2:00 a.m. He saw Johnson lying on the ground and discovered blood leading toward the front door. Officer Benczkowski and a team of police officers entered the house and located the severely injured Battisti-Phillips in the kitchen. Officer Benczkowski asked Battisti-Phillips if she could tell him who stabbed her, and she identified defendant as the person who had attacked her. Battisti-Phillips told Officer Benczkowski that defendant had her car and gave him a brief description of the vehicle. Emergency medical technicians arrived and took Battisti-Phillips and Johnson to a nearby hospital. Johnson was pronounced dead on arrival at the hospital; Battisti-Phillips's injuries required her to remain in the hospital for six days.

Later during the day of August 28, 2016, a Detroit police officer located Battisti-Phillips's car in a vacant lot in the city. The car was scorched and smoking, suggesting that someone had recently attempted to set it on fire. The car was not sufficiently burned to destroy the vehicle identification number (VIN) located on the dashboard. Detroit police officers ran the car's VIN through a vehicle identification system and determined that the car belonged to Battisti-Phillips

and that the Warren Police Department was looking for it. The car was towed from the vacant lot and given to the Warren Police Department. An inventory of the car revealed a screw driver and a serrated knife wrapped in a towel and a paring knife in the car's trunk. Neither knife was the weapon defendant used in his attack; police never recovered that weapon. That same day, police officers located defendant and followed him to a gas station, where they arrested him. He was tried and convicted as described above.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant argues that the evidence presented in the trial court was not sufficient to support his conviction of first-degree premeditated murder because there was no evidence that Johnson's murder was premeditated. We disagree.

This Court reviews a challenge to the sufficiency of the evidence in a jury trial de novo, viewing the evidence "in the light most favorable to the prosecution, to determine whether the trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Gaines,* 306 Mich App 289, 296; 856 NW2d 222 (2014).

First-degree premeditated murder is "[m]urder perpetrated by means of poison, lying in wait, or any other willful, deliberate, and premeditated killing." MCL 750.316(1)(a). "[T]o convict a defendant of first-degree premeditated murder, the prosecution must first prove that the defendant intentionally killed the victim." *People v Unger*, 278 Mich App 210, 223; 749 NW2d 272 (2008). The prosecution must also prove that a defendant's actions were premeditated and deliberate. "To premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem." *People v Oros*, 502 Mich 229, 240; 917 NW2d 559 (2018). Premeditation "require[s] sufficient time to allow the defendant to take a second look." *People v Abraham*, 234 Mich App 640, 656; 599 NW2d 736 (1999) (quotation marks and citation omitted). The amount of time necessary to allow a defendant to think twice about committing a crime is not an exact figure. *Oros*, 502 Mich at 242. Instead, "[i]t is often said that premeditation and deliberation require only a 'brief moment of thought' or a 'matter of seconds[.]' " *Id*. at 242-243 (citation omitted). The factfinder bears responsibility for "determin[ing] whether there was sufficient time for a reasonable person to subject his or her action to a second look." *Id*. at 242. Evidence that tends to establish premeditation includes: "(1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide," among other factors. *Abraham*, 234 Mich App at 656.

With regard to the prior relationship of the parties in the case at bar, there was some indication of conflict or tension between defendant and Johnson before the murder occurred, but this conflict did not play an obvious role in the murder. Defendant encountered Battisti-Phillips waiting for him on the front porch of her cousin's house because she did not want to cause "conflict" or "chaos," considering that defendant "already seemed to be aggravated . . . ." However, there was no evidence that defendant killed Johnson as a result of an argument or ongoing conflict. When defendant arrived at the house, he attacked Battisti-Phillips, not Johnson, suggesting that defendant was only looking to seriously injure or kill Battisti-Phillips. The evidence further indicates that Johnson was stabbed when he attempted to intervene and prevent defendant from continuing to stab, slice, punch, and kick Battisti-Phillips. Thus, there is no

evidence that any prior animosity between defendant and Johnson contributed significantly to Johnson's murder.

Additionally, defendant's actions before the killing occurred do not suggest that he expressly intended to attack and kill Johnson. Defendant arrived at the house where the attack occurred, armed at least with a knife, possibly a gun as well, and used the knife to repeatedly stab and cut Battisti-Phillips. Defendant stabbed and killed Johnson only after Johnson intervened and tried to stop defendant from stabbing Battisti-Phillips. No evidence was presented to support the notion that defendant arrived at the house with the intent to kill Johnson.

However, the circumstances in which the murder actually occurred do indicate premeditation because defendant had the opportunity to take a brief second look at his actions; instead, he chose to murder Johnson by repeatedly stabbing him in the neck and head area. As previously indicated, Johnson came out of the house and yelled at defendant to stop his assault of Battisti-Phillips, which, according to Battisti-Phillips, caused defendant to stop assaulting her and turn his attention toward Johnson. Although the interval was brief, it was long enough for Battisti-Phillips to try to stand up and escape from defendant, before Johnson fell on top of her, knocking her back to the ground. The time that passed between defendant's initial awareness of Johnson's presence and his ultimate decision to begin stabbing Johnson after he fell onto Battisti-Phillips gave defendant the opportunity to take a second look at his actions before deciding to stab repeatedly and to kill Johnson. See *Abraham*, 234 Mich App at 656.

Further, defendant's conduct after the homicide indicates that Johnson's murder was premeditated. Defendant fled the scene of the murder immediately after it occurred. Battisti-Phillips's car was set on fire in a vacant lot in Detroit, Michigan, likely in an attempt to destroy any evidence connecting defendant to the car and the crime. While defendant's flight alone does not sufficiently justify the conviction, in the context of premeditation, such evidence generally shows consciousness of guilt. *People v McGhee*, 268 Mich App 600, 613; 709 NW2d 595 (2005). Similarly, the destruction of evidence may also indicate consciousness of guilt. *Unger*, 278 Mich App at 226. It is the jury's responsibility to decide whether such evidence indicates guilt. *Id*. In defendant's case, sufficient evidence was presented for a jury to conclude that defendant's behavior after the murder showed consciousness of guilt, and overall, sufficient evidence was presented to support defendant's conviction of first-degree premeditated murder.

Although defendant's prior relationship with Johnson and defendant's actions before killing Johnson may not indisputably evince premeditation, the circumstances of the killing itself and defendant's conduct after the killing provide evidence from which a jury could conclude beyond a reasonable doubt that defendant had sufficient time to take a second look at what he was doing before he made the decision to fatally attack Johnson and, therefore, that Johnson's murder was premeditated. See *Abraham*, 234 Mich App at 656.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

In a supplemental brief, defendant argues that he was denied the effective assistance of counsel when defense counsel failed to call him to testify in support of his self-defense theory. This, in turn, resulted in counsel's failure to present any evidence in support of the theory. We are unpersuaded.

"Whether the defendant received the effective assistance of counsel guaranteed him under the United States and Michigan Constitutions is a mixed question of fact and law." *People v Ackley*, 497 Mich 381, 388; 870 NW2d 858 (2015). Generally, when examining a defendant's claim of ineffective assistance of counsel, "this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Dixon-Bey*, 321 Mich App 490, 515; 909 NW2d 458 (2017). "Clear error exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). However, defendant failed to properly preserve this issue by moving for a new trial or *Ginther*[2] hearing in the trial court. *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009). In the absence of a *Ginther* hearing, this Court's review is "limited to mistakes apparent on the record." *Id.*

To establish a claim of ineffective assistance of counsel, a defendant is required to demonstrate "that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). Defense counsel is presumed to be effective, *People v Frazier*, 478 Mich 231, 243; 733 NW2d 713 (2007), and defendant must be able to "overcome a strong presumption that counsel's performance constituted sound trial strategy," *People v Riley*, 468 Mich 135, 140; 659 NW2d 611 (2003).

A defendant has the constitutional right to testify on his own behalf. *People v Boyd*, 470 Mich 363, 373; 682 NW2d 459 (2004). Defense counsel was required to advise defendant of his right to testify, but "the ultimate decision whether to testify at trial remains with the defendant." *People v Bonilla-Machado*, 489 Mich 412, 419; 803 NW2d 217 (2011). At trial, the following exchange took place between defendant and defense counsel:

> *Mr. Sheikh* [defense counsel]: Mr. Johnson, since I've been your attorney I've come to see you in jail several times, correct?
>
> *Defendant Johnson*: Yes.
>
> *Mr. Sheikh*: And I've told you from day one that the most important decision that you would make and the one that was very fluid that you can change your mind on both at the last minute was whether you chose to testify or not, correct?
>
> *Defendant Johnson*: Yes.
>
> *Mr. Sheikh*: And I had indicated to you that neither the Judge with all his power or myself nor the prosecutor could either prevent you from testifying or compel you to testify; is that correct?

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

*Defendant Johnson*: Yes, it is.

*Mr. Sheikh*: Is it your decision now to testify or to not testify.

*Defendant Johnson*: To not testify.

*Mr. Sheikh*: Thank you, your Honor.

*The Court*: Okay. And, sir, and I'm sure Mr. Sheikh counseled you regarding testifying or not testifying, but you understand that whether to testify or not testify is your decision, your decision alone?

*Defendant Johnson*: Yes, I do.

Defendant waived his right to testify by agreeing that he understood that he could choose not to testify on his own behalf and, then, by so choosing. If a defendant "decides not to testify . . . the right will be deemed waived." *People v Simmons*, 140 Mich App 681, 685; 364 NW2d 783 (1985) (quotation marks and citation omitted). Defendant has not argued that he was unable to make a rational choice regarding his decision not to testify. See *Bonilla-Machado*, 489 Mich at 421 (holding that the defendant's right to testify was not violated because the defendant "made a rational choice not to testify" after being warned of the risk involved in not testifying). The record makes clear that defendant was fully apprised of his right to testify and that it was solely his decision not to testify. We decline to conclude that defendant's trial counsel rendered ineffective assistance by not compelling defendant to testify against his clearly expressed will not to testify. Defendant having failed to establish that defense "counsel's performance fell below an objective standard of reasonableness," his claim of ineffective assistance must fail.

Moreover, defendant's self-defense argument as set forth in his supplemental brief is merely speculative and in no way suggests that self-defense was a *substantial* defense, i.e., one that might have made a difference in the outcome of the trial. *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009). The jury was aware that defendant was not linked by DNA or fingerprints to the gun that witnesses said he used to shoot at the victims, and that the DNA and the fingerprints on the gun belonged to the victims. Counsel sought to capitalize on this testimony by opining in his closing argument that this meant that Johnson introduced the gun into the confrontation and that defendant reacted in self-defense. However, the record shows that defendant's knife assault on Battista-Phillips and Johnson was in full swing when the gun first appeared, and witnesses testified that they saw defendant shoot at the victims. Although counsel made what use as he could out of the forensic evidence related to the gun, his primary strategy was to argue that the prosecution's evidence was insufficient to prove beyond a reasonable doubt that defendant was involved in the attack. Accordingly, counsel stressed the absence of a murder weapon linked to defendant, how unlikely it was that defendant was involved considering that he had no cuts or bruises on his hands, arms, or body that could be associated with the type of attack alleged by the prosecution, and that there was no animosity between Johnson and defendant that would motivate such an attack or that his fatal stabbing of Johnson was premeditated. We will not substitute our judgment for that of trial counsel regarding matters of trial strategy or assess counsel's competence with the benefit of hindsight. *Payne*, 285 Mich App at 190. That a strategy

did not work does not necessarily amount to ineffective assistance of counsel. *People v Petri*, 279 Mich App 407, 412; 760 NW2d 882 (2008).

Affirmed.

/s/ Jane M. Beckering
/s/ David H. Sawyer
/s/ Michael F. Gadola